## BENNETT v. PUGH et al.
### No. 5485.

Court of Appeal of Louisiana. Second Circuit.

Oct. 29, 1937.

Jack & Jack, of Shreveport, for appellant.

Irion & Switzer and Henry F. Turner, all of Shreveport, for appellees.

DREW, Judge.

This is an action in tort in which the plaintiff is suing for damages for personal injuries received by her when she was run over by a milk truck owned by L. G. and Mrs. L. G. Pugh, operated under the tradename of "Lotus-Guernsey Farms." They were made defendants, together with her brother who was driving the truck, and the insurer of the above-named defendants.

The suit is based upon the alleged negligence of the truck driver in starting the truck or allowing it to start of its own accord when plaintiff was in the act of alighting from it. Defendants deny this allegation of negligence, and aver plaintiff attempted to alight from the truck while it was still moving, and against the warning of the driver, who was her brother. In the alternative, contributory negligence is pleaded.

After the case was tried, argued, and briefed by counsel below, the lower court rejected the demands of plaintiff in the following written opinion:

"This suit is one to recover for personal injuries claimed to have been received by plaintiff. She alleges that she was riding by the side of her brother, one of the defendants, on a milk-delivery truck, before daylight, and when she was alighting to make a delivery of milk, the truck was negligently put in motion, knocking her down, and the rear wheel running over her leg and seriously injuring her.

"On the question of liability of the different defendants, if there be any on the part of anyone, there is no serious doubt, and we therefore do not discuss same.

"There is no doubt but that plaintiff was riding in the truck. There is no doubt but that she was seriously injured while alighting from the truck, and the only real question is to the manner in which the accident happened. There are only two witnesses who throw any light on this question; the plaintiff on the one side, and her brother, one of the defendants, on the other side.

"There cannot be any serious doubt but that plaintiff carries the burden of proving by a preponderance of the testimony the negligence of the driver, and we can see no reason for saying that this burden shifts at any time.

"First we quote from the petition as to the manner in which the accident happened:

"'That Ralph Sellers brought said truck to a stop on the Pierre Mont Road in Caddo Parish, Louisiana, and after said truck was stopped, petitioner *commenced* (italics ours) to alight therefrom, but before she had stepped onto the ground, or while she was in the act of stepping onto the ground, said truck moved and lurched forward. * * *

" 'That at the time your petitioner was alighting from the said truck, the said truck had come to a stop and that the said Ralph Sellers knew or should have known that your petitioner was alighting from said truck * * * the said truck started up, or was started up, *before* your petitioner had stepped onto the ground.

" 'That the moving forward of the truck before petitioner had completely alighted caused the right side of the truck-bed to strike petitioner and to throw her to the ground and under the wheels of the truck. * * *'

"The testimony of the two witnesses as to the accident is rather brief, and we quote every word on this point in an effort to ascertain just how the accident did happen. On page 15 of the testimony, plaintiff testified on direct examination:

" 'Q. How was it that you were injured? A. Well, he stopped the truck out there on Pierre Mont Road for a delivery and just as I was getting out the car started and knocked me *off* and ran over my leg in two places.

" 'Q. What part of the truck hit you? A. The back of the cab.

" 'Q. You were sitting on the right hand side? A. Yes, sir.

" 'Q. And some part of the right hand side of the truck struck you? A. Yes, sir, the place that sticks out there on the truck. * * *

" 'Q. And where did the truck strike you, what part of the body? A. Well, somewhere around here right between my elbow and shoulder.

" 'Q. On your left? A. Yes, sir. * * *

" 'Q. When you arose from there on your feet to get out of the car, what was the condition of the car—was it stopped or moving? A. It was stopped.'

"And on page 32:

" 'Q. Mrs. Bennett, when you got out of the truck at the time that you were injured was the truck stopped or moving? A. It was stopped.

" 'Q. Was the motor of the car off or on? A. It was on.

" 'Q. It was on? A. Yes, sir.

" 'Q. Did your brother usually stop the motor of the car when he got out to make deliveries? A. He would not stop it, no.'

"Ralph Sellers, the driver, on page 68 et seq., testified:

" 'Q. Mr. Sellers, how did this accident happen to your sister? Now, don't tell anything except what you saw personally— she was on the truck that you were driving that morning? A. Yes, sir.

" 'Q. Out on the Pierre Mont Road? A. Yes, sir.

" 'Q. Just tell the court what happened there, please, sir? A. I started to make a stop and I turned off the ignition and was coasting down grade and it was about 15 or 20 feet from the time I turned off the ignition until I come to a full stop and she got out and left the truck before it came to a standstill. There is where she fell on the ground and was run over.

" 'Q. At the time was the truck stopped or was it in motion? A. It was in motion.

" 'Q. You had not stopped the truck? A. No, sir, it was slowing down.'

"And on cross-examination:

" 'Q. Why did she fall, Mr. Sellers? A. I beg your pardon?

" 'Q. Why did she fall? A. She stepped from the truck, opened the door and stepped from the truck and fell.

" 'Q. Was the door open? A. She opened the door.'

"Mrs. Bennett, when placed on the stand in rebuttal, page 78:

" 'Q. Mrs. Bennett, you heard Ralph Sellers testify from the witness stand that you opened the door and got out of the car while it was in motion. Is that correct? A. No, sir.'

"And on cross-examination, page 79:

" 'Q. Mrs. Bennett, this particular morning when you stepped out of the truck in the dark, had the truck come to a stop? A. It was stopped.

" 'Q. You know positively that it was stopped? A. Yes, sir.

" 'Q. No doubt about it? A. No, sir, no doubt about it. * * *

" 'Q. You do not know exactly, Mrs. Sellers, how the accident happened? A. I know the truck knocked me over.

" 'Q. When you were getting out the truck knocked you *off?* A. Yes.

" 'Q. This is all you know? A. I know that the back wheel ran over me.

" 'Q. Did you have a bottle of milk at that time to deliver? A. No, sir, I was getting to it.

" 'Q. Getting it? A. Yes, sir.

"'Q. Already had gotten on the ground? A. *I was in the act of getting on the ground.*

"'Q. You were in the act of getting on the ground when the truck hit you? A. Yes, sir.

"'Q. Had you reached for the milk? A. I had not reached for the milk but I was in the act of turning around to get the milk.

"'Q. You had gotten on the ground when you were in the act of turning around, reaching for the milk, when the truck struck you? A. I was not in the act—I was just about turning around when I was struck by the truck.

"'Q. You did not lose your balance? A. No, sir.

"'Q. As a matter of fact, it happened so quickly that you don't know how it happened? A. I know that the truck knocked me *off;* I know that it knocked me under the truck.

"'Q. Just how did the truck knock you *off?* A. Well, just as I started to get off, it hit me there and knocked me under.

"'Q. You mean that he started the truck up again? A. I did not say that he did.

"'Q. What do you mean? A. I mean that the truck hit me. I couldn't say that he started the truck.'

"To properly determine how the accident happened, we must take into consideration one law of physics, and that is that as long as plaintiff had even one foot on the running board or step of the truck, she would travel just as fast as the truck did. Such an accident could have happened in several different ways; she could have stepped from the moving truck and when her feet hit the ground, she either lost her balance and fell, or could have been hit and knocked down by the projecting body of the moving truck. She could have been preparing to alight with either one or both feet on the running board, and knocked off the running board by the truck suddenly starting up; or she could have gotten off the truck with it stopped, then with her feet on the ground, hit by the body after the truck started. But as long as she remained on the truck, even on the running board or step, she was moving just as fast as the truck body was moving, and we do not think it would have been physically possible for the projecting truck body to strike her and knock her *off* the truck. We thought at first that perhaps the use of the phrase 'off the truck' might have been the inadvertent use of 'off' on the part of plaintiff, but it was repeated so many times that we must conclude that it was used advisedly. She says repeatedly that she had not gotten on the ground. The only way for her forward motion to have been retarded to such an extent that the truck body could catch up with her, hit her, and knock her *down,* was for her foot or feet to have been on the ground.

"We believe plaintiff honestly thinks the accident happened just as she detailed it, but we do not think it could have happened that way. If Ralph Sellers had not taken the stand at all, or, if we disregard his testimony in toto, we do not see how we can render any judgment for plaintiff. Plaintiff was injured seriously, although happily not permanently, except for the scar, but in order to recover the testimony must show negligence on the part of the driver, and we do not think the testimony of plaintiff proves that.

"There should be judgment rejecting the demands of plaintiff.

"T. F. Bell, District Judge."

We fully agree with the lower court that plaintiff has failed to make out her case by a preponderance of the testimony.

Plaintiff's case, as set forth in her petition, is that her brother brought the truck to a standstill, and as she was in the act of alighting from it, the truck suddenly started forward, causing her to be struck by a projection of the body on the rear of the truck and knocked beneath it. On the trial of the case, she testified that she did not say her brother started the truck again after it had been stopped, and could not say that he started it again. Her brother, who was driving the truck, is positive that it had not come to a stop when plaintiff attempted to get off of it, and that he warned her not to get off. When plaintiff refused to testify that her brother started the truck again after it had come to a stop, she in effect corroborated her brother, who testified the truck had never stopped. We can find no good reason for failing to give credence to the testimony of the brother. He and his sister, the plaintiff, were on the best of terms. She was living with him at his request. She rendered him some assistance in his work. There is nothing in the record to indicate there was any friction of any nature between them. He was not in

danger of losing anything if judgment were rendered against him, for the reason that the liability insurance carried on the truck was more than sufficient to cover any judgment plaintiff could have hoped to recover for the injuries she received. He was not in danger of losing his job, because plaintiff was on the truck with the consent of the owners and his employers. It is unreasonable to believe, under the circumstances, that he would testify falsely to deprive his sister of anything to which she was justly entitled. His testimony is clear and plausible, and must be given the same weight as plaintiff's. When we do this, plaintiff has completely failed to make out her case in accordance with law and with a preponderance of the evidence.

The judgment of the lower court is correct, and is affirmed, with costs.