418 So.2d 689 (1982)
Armantine M. SMITH
v.
TRAVELERS INSURANCE COMPANY, et al.
No. 11819.
Court of Appeal of Louisiana, Fourth Circuit.
July 16, 1982.
Writ Granted October 18, 1982.
*690 Theodore A. Mars, Jr., New Orleans, for plaintiff-appellant.
Phelps, Dunbar, Marks, Claverie & Sims, Mark B. Meyers and Jesse R. Adams, Jr., New Orleans, for Arthur Henry Chester, Underwriters at Lloyds of London and excess underwriters, defendant-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John J. Weigel and Madeleine Fisher, New Orleans, for Travelers Ins. Co. and Jerry Krushin, defendants-appellees.
Before SAMUEL, GARRISON and BAILES, JJ.
SAMUEL, Judge.
This is a tort action for very serious personal injuries sustained by the plaintiff in a one-vehicle automobile accident. The car had entered into a parking area where it stopped and then proceeded to move backward in reverse gear in order to turn around. During that time plaintiff opened the car door to leave the vehicle. Primarily at issue is whether the driver knew, or should have known, plaintiff intended to leave the vehicle and was proceeding to do so. She fell and was struck by the open door which traveled across her back, "popping" her spine.
The originally named defendants are Jerry Krushin (defendant driver), Kemper Insurance Company,[1] Travelers Insurance Company, public liability insurer of Krushin, and State Farm Mutual Automobile Insurance Company, plaintiff's liability insurer. Kemper, Lumbermens and State Farm subsequently were dismissed without prejudice and those insurers are not before us in this appeal. The matter proceeded to trial against Krushin, Travelers and the Underwriters at Lloyds of London, the latter being excess insurers made defendants by supplemental and amended petition.
The matter was tried to a jury which returned a verdict in favor of the defendants, dismissing plaintiff's suit, and that verdict was made the judgment of the court.
Plaintiff has appealed. In this court she assigns as error the trial court's refusal to:
1) order the defendants to make available statements taken by them from the driver and a guest passenger, Revonda Surratt, shortly after the accident; 2) grant plaintiff's pre-trial motion to exclude testimony relative to the use of marijuana by the plaintiff on the evening of the accident; 3) grant plaintiff's pretrial motion to exclude testimony of a defendant witness concerning cost of payment for an annuity which allegedly would provide a monthly income to plaintiff; and 4) admit certain plaintiff proffers.
Appellant further contends: 5) the trial court erred in giving certain allegedly incorrect and erroneous charges to the jury regarding proximate cause (instead of cause in fact), assumption of the risk, last clear *691 chance, the duties of the driver of the vehicle, and the "non-existent" duty of a guest passenger to notify the driver of her intention to alight from a "parked" vehicle. Finally, she contends: 6) the jury verdict was manifestly erroneous and clearly contrary to the law and the evidence.
Relative to appellant's first assignment of error, she argues there was "good cause" for the trial court to order the production of the statements of the only two people, other than plaintiff herself, who were witnesses to the occurrence of the accident, because she was thrown to the ground and sustained a blow on the head, rendering her recollection of facts and circumstances not as clear as was the recollection of those other two witnesses. The trial judge refused to order the production of the statements.
The accident occurred in late December, 1978, and the statements of the defendant driver and that of Ms. Surratt were taken, respectively, on February 8, 1979 and February 19, 1979. Defendants contend the statements were taken in anticipation of litigation, and that plaintiff has not demonstrated undue prejudice.
Initially, plaintiff did not file a request for production of the statements; she filed only a motion to compel production. When the matter was heard the trial court denied the motion without prejudice so that plaintiff could reurge the motion after the depositions of those persons had been taken. Following the taking of the depositions, plaintiff filed a request for production, which the insurer refused, reurging its position that the statements were taken in anticipation of litigation and no prejudice had been demonstrated. No further action was taken by plaintiff to obtain the statements.
In pertinent part, Code of Civil Procedure Article 1424 reads:
"The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice."
The article contemplates a twofold inquiry: (1) Were the items sought to be discovered obtained or prepared in anticipation of litigation?; if so, (2) will the party seeking the production be unfairly prejudiced or subjected to undue hardship or injustice by the denial? The burden on the first inquiry rests with the party holding the statements. If carried, the burden to prove prejudice, hardship or injustice shifts to the party seeking production.[2] The applicable principles are discussed in Sonier v. Louisiana Power & Light Co., La.App., 272 So.2d 32, Bordelon v. Phoenix Insurance Company, La.App., 244 So.2d 919, and Self v. Employers Mutual Liability Ins. Co. of Wis., La.App., 90 So.2d 547.
That the statements of Krushin and Surratt were taken in anticipation of litigation is not seriously contested. Plaintiff argues only that she demonstrated good cause to overcome the exception. She relies on the case of Ogea v. Jacobs, La., 344 So.2d 953, for the proposition that statements taken shortly after the accident are of unique value for discovery purposes. In Ogea, the statement was taken several days after the accident. In the instant case, they were taken six to eight weeks after the accident. We note also that Ogea limited its holding to the facts in that case and the court declined to adopt a strictly time-keyed rule.[3]
In this case depositions were taken. Plaintiff claims they were filled with "I don't recall, and I don't remember". While we are not cited to specific instances, we do note that Surratt was a plaintiff witness.
*692 Plaintiff further complains that a matter of lighting was brought out at the trial but not at the deposition. If the question was not asked at the deposition, plaintiff cannot complain that such information was not volunteered at that time.
As has been said, although plaintiff filed a motion to produce the statements after the depositions were taken, she did not file a rule to compel which would have given the trial court the opportunity to pass upon the objection in the light of the depositions. Since this was not done, the original ruling was still in effect. Regardless of these facts, in our view the trial court ruling was correct. The record before us does not establish that denial of production or inspection of the statements unfairly prejudiced plaintiff or caused her undue hardship or injustice.
Regarding appellant's second contention, the trial court ruled that testimony relative to marijuana use prior to the accident was relevant and could be presented to the jury. In our opinion, to have concealed that fact would have been improper, just as it would have been to exclude testimony relative to the use of alcohol prior to the accident. The jury was instructed to draw reasonable inferences based on native intelligence and reach its own conclusion, taking into account common knowledge and human experience. We find no error in this instance.
Appellant's third assignment of error is directed to testimony regarding cost of an annuity allegedly sufficient to provide a monthly income to plaintiff, and thus was concerned solely with quantum, i.e., the amount of damages which could be awarded in the event of a judgment in favor of plaintiff. Since the jury decided the issue of liability against the plaintiff, the trial court ruling relative to this testimony was inconsequential; it could not have influenced the jury one way or another and does not constitute reversible error. Olivier v. Ourso, La.App., 308 So.2d 811.
Relative to the fourth assignment of error, the evidence plaintiff sought to introduce in evidence, but was refused, consists of computer printouts regarding plaintiff's life expectancy as it affects health care costs. The printouts are before us by means of a proffer. The witness testified to the future cost of plaintiff's health care and showed the printouts, including calculations showing the cost of a homemaker at three days per week, 8 hours per day, and such calculations without including the cost of a homemaker. These were gross figures and not discounted to present value. The trial court permitted the testimony and allowed the jury to see the printouts, but refused their introduction in evidence on the ground that the figures on the printouts had been testified to in full by the witness and therefore such documentary evidence would add nothing to the testimony.
Since the jury never reached the issue of damages, the ruling on this proffer also is inconsequential. Olivier v. Ourso, supra.
We do not consider in detail the fifth assignment of error, which is concerned with alleged incorrect and erroneous jury charges given by the court. The rule enunciated in Gonzales v. Xerox Corporation, La., 320 So.2d 163, is that when an appellate court has all the facts before it, a trial judge's erroneous instruction to the jury does not warrant a remand; under such circumstances the appellate court must review the trial record and reach a decision on the merits. In this case all of the facts are before us, we have thoroughly reviewed the record, and we have concluded that the jury verdict and the judgment appealed from are correct. Thus, there is no need to consider each alleged erroneous charge in detail because, under Gonzales, even if one or more of the charges were both erroneous and consequential, we could not remand and we would be required to do what we already have done, review the record and reach a decision on the merits.
We find the following facts:
The accident occurred in late December, 1978. Plaintiff, Armantine Smith, her friend, Revonda Surratt, and Jerry Krushin, the defendant driver, had gone Christmas *693 shopping. After the stores closed about 9 or 9:30 p.m., the three drove to a bar where they each consumed four or five alcoholic drinks between the time they arrived and the time they left at about 12:30 a.m. Krushin was seated in a chair near the end of the bar during all or most of that time, but the ladies circulated during the evening and, on one occasion, went outside with two other men to the latters' car, where each took four or five puffs from a marijuana cigarette. Krushin was invited, but did not join that group.
Plaintiff, Krushin and Surratt left the bar for the purpose of returning to the apartment complex where the latter two resided. The three occupied the front seat of the car with Krushin driving, Surrat in the middle, and plaintiff seated to the extreme right next to the door. As they approached the entrance to the complex, they heard a favorite song on the radio and either Krushin or Surratt turned up the volume well above normal. Krushin decided to drive around until the song was finished before stopping at the apartment, and the ladies knew this.
Accordingly, after entering the main gate of the complex, Krushin turned to the right instead of to the left (the latter being the way to his apartment). At this time the two ladies were chatting with each other. They saw swings and a children's play area with which plaintiff was unfamiliar. Surratt explained this was the area for couples with children, as opposed to the adults' area where she and Krushin lived. The ladies decided to go to the play area and try out the swings. They did not inform Krushin of this decision and he did not hear their conversation due to the loud music and the fact that the ladies faced each other while they conversed.
Intending to turn around and head back to his apartment, Krushin drove into a parking area adjacent to the playground, stopped momentarily and put his car in reverse. He did not drive directly into the space of one of the parking bays; the vehicle crossed the right parking line of a bay. There were about three open bays between his car and the vehicle parked to his right. The car parked to his left was about one to one and one-half bays from his vehicle. Preparatory to backing up and as he began backing up, he looked to his left front and then over his left shoulder to his left rear. At this point, either when the car was moving or when it was momentarily stopped prior to putting the car in reverse (the vehicle had automatic transmission and the motor was never turned off), plaintiff opened the door and either stepped or tripped out of the vehicle and fell to the ground. Surratt screamed and Krushin immediately stopped the car after it had travelled backwards only one to one and one-half feet. However, plaintiff was struck by the car door and has been paralyzed since that time as a result of the accident.
It is clear that the conversation between the ladies about getting out of the automobile came up only seconds before plaintiff actually opened the door to get out. Accordingly, plaintiff knew, or should have known, that when Krushin began to turn into the parking bays he was not doing so with the intention of letting her get out to play on the swings. She knew the radio was blaring and she had no reason to anticipate Krushin could hear her conversation with Surratt over the loud music. Further, she knew the reason for driving around the complex was to hear the song and that they were, in fact, going to return to Krushin's apartment.
Under these circumstances, we are satisfied that the incident happened too quickly for Krushin to stop before it occurred. Accordingly, we find no negligence on the part of the defendant driver.
Regarding the sixth and last assignment of error, that the jury verdict was manifestly erroneous and clearly contrary to the law and the evidence, as shown by our above discussion of our review of the record and our conclusions regarding the same, and as stated above, we are of the opinion that the jury verdict dismissing plaintiff's suit was both factually and legally correct.
Finally, we note that the rule relative to our independent review of the record insofar *694 as the alleged jury charges are concerned (under Gonzales and discussed above in our consideration of the fifth assignment of error) probably also is applicable to the second, third and fourth assignments of error regarding alleged erroneous rulings on the exclusion or admission of evidence.[4] However, because of the severity of the injury here involved, we have given a more detailed consideration to those assignments of error.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
GARRISON, J., dissented with written reasons.
GARRISON, Judge, dissenting.
I dissent.
On December 26, 1978 plaintiff, Armantine Smith, Revonda Surrat and Jerry Krushin[1], the driver of the vehicle, had gone Christmas shopping. They then drove to Nick Castrogiovanni's bar, "Nick's", where they each consumed four or five drinks between the hours of 9:00 p. m. or 10:30 p. m. and 12:30 a. m. Additionally, plaintiff had four puffs from a marijuana cigarette early during the 9:00 p. m. or 10:30 p. m. to 12:30 a. m. period. Revonda Surrat also smoked the marijuana cigarette.
The four then left the bar and returned to the apartment complex where Krushin resided. Krushin took a circuitous route through the parking lot in order to continue listening to a favorite song. Krushin pulled into a parking slot, placed the car in neutral with the motor running and was listening to the song when plaintiff opened the car door to leave the vehicle. Krushin shifted into reverse. Either plaintiff was knocked down by the open car door after she had exited the vehicle, which was now moving in reverse, or tripped and fell while exiting the vehicle. In either case, the open door traveled across her back, "popping" her spine. She is now paralyzed.
On appeal, plaintiff raises 15 individual specifications of error. A number of those specifications deal with jury instructions by the trial court. Defendant argues that plaintiff failed to timely object at trial. I do not agree. The trial judge stated as follows:
"Now, prior to the giving of the charges a conference was had with counsel of record in which the Court indicated to [each] party those specially requested charges which would be given, and those specially requested charges which were requested but denied.
"The Court assured all counsel that their objections were timely made and will have the record reflect that those objections were timely made. It is just that it has not been convenient for the Court to place this on the record until now.
"So, it will suffice it to say that with respect to the general charges, each party has objected to that portion of the general charges which has not been favorable or was detrimental to his particular client. With respect to plaintiff's requested special charges, he has particularly objected to the Court's failure to give those charges which the Court denied, and he has objected to those specially requested charges of the defendant which the Court did agree to give.
"With respect to the defendant, the defendant has objected to all of those specially requested charges made by the plaintiff which were given, and has specifically objected to all of those defense-requested charges which were denied." (Tr., Vol. VII, p. 673)
C.C. art. 1793 requires that objections be made (1) by a party; (2) before the jury retires; (3) that the party state the matter to which he objects; and (4) that the party state the ground of his objection.
*695 As evidenced by the trial judge's discourse, both parties complied at the charges conference. While the specific grounds and matter of each objection[2] technically should have been made part of the transcript, the error, if any, lies on the part of the trial judge. Both parties made their objections as much as they were able in light of the circumstances. All jury charges requested, given and denied, are contained within the record along with the trial judge's research and decision notes. The purpose of making an objection is to call the attention of the appellate court to the matter as potentially requiring further examination. I am amply notified.
On appeal plaintiff argues that the following charge prejudiced the jury so as to create reversible error.
"She must ascertain that the driver knew or, under the circumstances, with the exercise of reasonable care could or should have known that which she was going to do, that is, leave the automobile, and failure to ascertain this or to notify him of her intentions, could be considered as a breach of duty on her part." (Tr., Vol. VII, pp. 668-669)
Defendant argues that the jury charge was proper, citing Westerfield v. Guichard, 233 So.2d 19 (La.App. 4th Cir. 1970); Ramos v. Gentilly Woods Phillips 66, Etc., 354 So.2d 729 (La.App. 4th Cir. 1978); Aucoin v. Lodrigues, 252 So.2d 758 (La.App. 1st Cir. 1971); McTire v. Gremillion, 38 So.2d 800 (La.App. 2nd Cir. 1949); Bennett v. Pugh, 177 So. 112 (La.App. 2nd Cir. 1937); and three New York cases. None of the cases cited by defendant place on the passenger the affirmative duty to notify the driver of her intentions to leave the vehicle absent extraordinary circumstances. In Aucoin, above, an adolescent male jumped from a rear door of a moving vehicle. In McTire a middle aged gentleman was riding on the outside running board of a truck. His hat blew off of his head and in his attempts to "grab" the hat, he fell off of the running board. In Bennett a middle aged woman stepped off of the running board of a milk truck which had never stopped. In Guichard the plaintiff opened her car door, causing it to protrude into the path of an oncoming car. Likewise, in Ramos, a truck traveling in reverse hit the open door of a parked automobile while the passengers were attempting to exit.
Defendant argues that a passenger's duty to see that which she should have seen or, to put it another way, to ascertain that she can disembark safely, is equivalent to an affirmative duty to inform the driver of a parked vehicle of her intention to leave the parked car. I cannot agree. The duty to ascertain safe disembarkment is one which requires only the attention and subjective judgment of the person disembarking; it does not require communication or other objective manifestation, as it occurs solely and wholly in the mind of the passenger. There exists no affirmative duty to communicate. Indeed, it would be ludicrous to require of the citizens of Louisiana whenever a car is parked that the driver and passenger must look at each other and say, "I'm getting out now." Thus, I conclude that the trial judge's instruction constituted error.
Although the trial judge erred in his instructions, is that error a reversible error? I find that it is. The test to be applied is whether the error was likely to have affected the final outcome of the trial so that it is reversible error instead of mere harmless error. In the instant appeal I find that the faulty jury instruction did, in fact, affect the outcome of the trial. Having been told that the plaintiff had an affirmative duty to inform the driver of her intention to depart, the jury could only have found as it did. Accordingly, I find that reversible error has occurred. However, the case need not be remanded to the court below. Under Gonzales v. Xerox, 320 So.2d 163 (La.1975), this court may render judgment.
*696 On appeal, plaintiff argues that the verdict rendered was clearly contrary to the evidence and testimony presented. I agree.
Mr. Krushin had replaced the car radio with a sound system consisting of a bi-amplified Sanyo AM-FM cassette system with two rear mounted 6" × 9" tri-axial speakers. At the time of the accident, Mr. Krushin turned up the volume of the sound system in order to listen to a song, and drove to an area of the apartment complex other than the area where he lived. He testified that he could not hear the conversation between Revonda and plaintiff,[3] although they were seated directly next to him on the front seat. Mr. Krushin was so engrossed in the music that he even failed to notice when the inner car light came on when plaintiff opened the door. Most significantly, Krushin placed the car in reverse gear, admitting that he did not look to the right at any time. The proximate cause of the accident was Krushin's action in placing the car in reverse gear. But for that action, the car door would not have traveled across plaintiff's back, "popping" her spine. Accordingly, I conclude that the sole cause of the accident was the negligence of defendant Krushin.
Turning to the issue of quantum, I note that plaintiff has $1,693,068.59 in special damages alone, itemized as follows:

Past Medicals $ 69,456.59
Past Lost Wages 9,102.00
Lost Pension Benefits 52,796.00
Future Lost Wages 451,929.00
Future Medicals 1,109,785.00
 _____________
 TOTAL $1,693,068.59

Plaintiff's past medicals include the following:

1. Tulane Doctors $ 4,822.57
2. Ramp 2,498.30
3. Travel 255.22
4. Nurses 7,410.00
5. Other Doctors 2,288.50
6. Prescriptions 456.66
7. Catheters 125.03
8. Medical Supplies 205.14
9. Underpads 234.73
10.Ambulances $ 850.00
11.Wheelchairs, Body Jacket, etc. 2,023.38
12.Jo Ellen Smith Hospital 630.10
13.St. Dominic Hospital 833.71
14.Miss. Meth. Rehab. Center 24,308.30
15.Tulane Medical Center
 a. 12/28/78 - 01/31/79 11,828.25
 b. 05/23/79 - 06/05/79 (13 days) 3,866.48
 c. 08/31/79 - 09/11/79 (11 days) 4,143.18
 d. 10/13/79 - 10/20/79 (7 days) 2,408.84
 __________
 TOTAL $69,456.59

Plaintiff's 1978 income tax return indicated that she made $10,815.00 per year, or $901.25 a month. Accordingly, for a period of 10.1 months, plaintiff's lost wages totaled $9,102.00.
In computing lost pension benefits,[4] plaintiff's expert used a 2½ increase rate[5] to plaintiff's base salary and a 5% discount rate. No inflationary figure was included. This amount totaled $52,796.00. No demand was made for loss of other fringe benefits. I note that plaintiff's expert used very conservative factors; both the discount and inflation factors tended to favor the defense and are overwhelmingly fair amounts.
Plaintiff's lost wages were computed by adjusting her base salary by 2½%[5] by a 3% inflation factor and by a 5% discount rate, resulting in the amount of $451,929.00.
Plaintiff's future medical expenses are itemized as follows:

Hospitalization $ 584,184.00
In-Office Visits 24,818.00
Prescriptions 34,418.00
Incidental Expenses 179,962.00
Housekeeper 286,403.00
 _____________
 TOTAL $1,109,785.00

Because of plaintiff's condition, she will require hospitalization 2.5 times annually for urinary tract infections at a cost of $3,517.00 per stay, or $8,792.00 annually. Using an 11½% inflation rate and a 10% discount rate, this amounts to $584,184.00.
Armantine will also incur in-office doctor's fees at a cost of $525.00 per year. Using a 10% inflation rate and a 10% discount rate, this equals $24,818.00.
*697 Prescription drugs have averaged $119.11 per month, or $1,429.00 per year. Using a 6.7% inflation rate and a 10% discount rate, this equals $34,418.00.
Incidental expenses include the following:

Miss. Methodist $600.00/yr. (2 checkups
Rehab. Ctr. per year)
Drugs during Hospitalization 563.00/yr. (2½ times
 per year)
Daily Betadine Solution,
Pads, Catheters 2,233.00/yr. ($186.10/mo.)
Irrigation Fluids 402.00/yr. ($35.20/mo.)
Urine Culture and
Catheter Tray 240.00/yr. ($200.00/mo.)
 _____________
 TOTAL $4,078.00/yr.

Using a 9.7% inflation rate and 10% discount rate, this figure equals $179,962.00 present value.
Plaintiff also argued that she is entitled to a homemaker for 24 hours a week.[6] At the standard wage of $5.20 per hour, this equals $6,490.00 annually. Using a 9.7% inflation rate and 10% discount rate, present value equals $286,403.00. Thus, plaintiff's total special damages equals in present value $1,693,068.59.
Turning to the issue of general damages, I note that there is very little caselaw on cases of this magnitude as most multi-million dollar cases in Louisiana are settled prior to reaching the appellate level. Accordingly, I will examine the effect of the accident on plaintiff's life.
Armantine was an active, 24-year old female. She enjoyed traveling and was especially fond of dancing. She was an excellent teacher and was active in her school's extracurricular activities.
She is now permanently confined to a wheel chair and has no sensory or motor functions from the point of impact down. She has been advised not to have children and will never experience sexual fulfillment. She suffers chronic urinary tract infections and will require hospitalization 2.5 times annually. She will be under the continuing care of a battalion of physicians for the rest of her life. Obviously, she can no longer pursue her career.
Due to the loss of sensory and motor functions, plaintiff has no control over her excretory functions. She is required to perform complex and time-consuming self-catheterization and suppository inserts to relieve this problem. Additionally, she must suffer the embarrassment, humiliation, discomfort and danger of infection caused by seepage. She is subject to the possible formation of kidney stones and, potentially, loss of all kidney function due to infection. It is incredibly difficult for plaintiff to use restroom facilities away from home.
She is subjected to ongoing danger from skin breakdown which requires her to awake every night at regular two-hour intervals in order to change position.
She is unable to take a bath because her mother's home does not have a bathroom designed to accommodate wheelchairs.
She cannot drive a car or enter or exit a car without help and cannot put her wheelchair into a car.
She was required to give up her apartment and return to the home of her retired and widowed mother. She is unable to do her laundry, cook, wash her hair or face, remove items from a refrigerator or chest of drawers, or dress herself. She has trouble traversing doorways and cannot move the wheelchair close enough to a table to enable her to eat in restaurants. She has not had a date since the accident.
In light of the tragic effects of this accident upon this plaintiff for her loss of lifestyle, past, present and future pain and suffering, for her embarrassment, humiliation, and total destruction of all the qualities and pleasures that make human life meaningful, I find that Five Million Dollars for general damages is an appropriate sum.
I do not consider the marijuana aspect of this case to be relevant.
For the reasons discussed, I would reverse the judgment of the district court and render judgment as follows:
*698 IT IS ORDERED, ADJUDGED AND DECREED that there be and hereby is judgment herein in favor of the plaintiff, Armantine Smith, and against the defendants, Jerry Krushin, Travelers Insurance Company and Sir Arthur Henry Chester, as representatives for certain underwriters at Lloyds in London, subscribing to Certificate No. 31527, in the full and true sum of SIX MILLION SIX HUNDRED NINETY-THREE THOUSAND SIXTY-EIGHT AND 59/100 ($6,693,068.59) DOLLARS, subject to Traveler's policy limits of one million dollars, excess to be paid under the Lloyds excess insurance, plus legal interest from the date of judicial demand until paid, and all costs of all proceedings herein.
NOTES
[1] Properly Lumbermens Mutual Casualty Company.
[2] American Mark Distrib. Corp. v. Louisville & N. R. Co., La.App., 180 So.2d 869.
[3] "We cannot conclude that in every case, because of the lapse of time in itself, a party denied production of a statement taken near the time of the event will be unfairly prejudiced in the preparation of his case or caused undue hardship or injustice." (at page 959).
[4] Ragas v. Argonaut Southwest Ins. Co., La., 388 So.2d 707; and prior cases to the same effect cited in Gonzales.
[1] At the time of the accident Jerry Krushin, his co-worker, Claude Elowe, and Revonda Surrat were roommates. At the time of trial the threesome still resided together, although Revonda Surrat and Claude Elowe had married. Thus there are no truly "disinterested" witnesses to the accident.
[2] Very rarely does this court see any objections other than "immaterial", "irrelevant", "prejudicial" or "hearsay." The review of both law and facts exercised by Louisiana courts appears to deprecate the law of evidence in civil cases.
[3] Krushin's inability to hear this conversation is of crucial importance as the parties thereto were discussing leaving the vehicle. Revonda was also planning to exit from the car
[4] Armantine was thirty-three days short of attaining tenure at the time of the accident.
[5] This is the average increase rate of the Jefferson Parish school teachers contract.
[6] Due to the nature and extent of plaintiff's injuries, I feel that a seven-days-a-week homemaker is appropriate; however, there is no present value for this contained in the record. Armantine is cared for by her retired, widowed mother.