MADELEINE M. LANDRIEU, Judge.
11 Defendants in this personal injury action, Mike Anderson’s Seafood of New Orleans, Inc., Mike Anderson’s Seafood, Inc., and Lafayette Insurance Company (collectively, “Mike Anderson’s”), appeal the jury trial verdict in favor of plaintiffs, James and Denise Johnson (“the Johnsons”). For the reasons that follow, we affirm the trial court’s judgment.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
Mike Anderson’s contracted with Aquatic Specialties, Inc. (“Aquatic Specialties”) for the care and maintenance of aquariums located behind the bar in its New Orleans restaurant. On August 20, 2004, James “Kevin” Johnson, an employee of Aquatics Specialties, was injured while tending to one of the aquariums. At the time of the accident, Mr. Johnson was doing his weekly cleaning of the aquariums, as he had been doing for approximately ten years.
The aquariums were encased in wooden cabinets with large brass portholes as doors. The portholes weighed approximately fifty pounds each. The wood front, including the porthole, was attached to the bottom of the cabinet by hinges. The wood front was attached near the top by latches and was also attached to the wall by chains which ran from the back of the wood front behind the latches to the wall. |2To open the cabinet in order to gain access to the aquarium, the latches were unlatched and the wood front and porthole were lowered, like a drawbridge.
To clean the aquarium, Mr. Johnson had to lower the wood front and porthole, step up on a stepladder, and reach inside of the aquarium. On this day, after lowering the door of one of the cabinets, Mr. Johnson stepped off the stepladder with one foot, kept one foot on the stepladder, and reached for his topis. As he was reaching for his tools, the porthole and frame became detached from the cabinet, swung out, and hit him in the right shoulder and neck, causing his injuries. While the frame was detached, Mr. Johnson saw that the frame had been attached to the cabinet by finishing nails.
Mr. Johnson filed a workers’ compensation claim against his employer, Aquatic Specialties. Aquatic Specialties then sent a notice of subrogation to Mike Anderson’s. After receiving the notice, Mike Anderson’s insurer, Lafayette Insurance Company, assigned the claim to its adjuster, Mark Leblanc. As part of this investigation, Mr. Leblanc interviewed the office manager of Mike Anderson’s and two employees who were present on the day of the accident.
In August of 2005, the Johnsons filed suit against Mike Anderson’s and, during *129 the course of the litigation, sought to discover the contents Lafayette’s claim file. Mike Anderson’s objected to this discovery request. Subsequently, the Johnsons filed a motion to compel, specifically seeking an order compelling Lafayette’s investigator, Mr. Leblanc, to respond fully to questions regarding his investigation of the accident. Following a hearing on this motion, the trial judge ordered Mike Anderson’s to produce under seal “any and all material, including but not limited to ‘Liability Cap Report(s)’ and Claim File Notes,’ which in any way reflected communication between Mr. Leblanc and Mr. Copping” for an in | ^camera inspection.[1] Mike Anderson’s applied for supervisory writs seeking review of this judgment. This Court denied the writ on the basis that the trial court did not abuse its discretion. After conducting the in camera inspection, the trial judge ordered that the documents be released to the Johnsons. Mike Anderson’s again applied to this court for supervisory review and was granted a stay by the trial court while its writ was pending. This Court denied the writ without reasons. Mike Anderson’s then produced the report.
Prior to trial, Mike Anderson’s filed a motion in limine to exclude the Liability Cap Report from being admitted into evidence. The trial judge granted the motion in part, excluding information regarding coverage and reserves in the document; denied the motion in part, allowing plaintiff to question representatives of Lafayette regarding its investigation; and deferred in part, postponing ruling upon the admissibility of the remainder of the document and specifically, of the notes contained in the document regarding Lafayette’s legal liability. Just before the beginning of trial, Mike Anderson’s again objected to the use of the document based on its prior discovery motions and the motion in limine. The trial court denied the objection, specifically referencing the prior writs, which it found to be the law of the case.
During the trial, the plaintiffs offered to introduce the Liability Cap Report into evidence during the direct examination of Mr. Leblanc. Mike Anderson’s objected to the introduction of the document, and the objection was overruled. At the conclusion of the trial, the jury found in favor of the Johnsons and awarded |4damages. The trial judge made the jury’s findings the judgment of the court on December 6, 2012. Mike Anderson’s appeals this judgment.
ISSUES
In this appeal, Mike Anderson’s asserts four assignments of error:
1. The trial court committed legal error in allowing into evidence internal liability reports, internal status reports, and internal claims file notes.
2. The jury committed legal error in finding that a defect existed.
3. The jury committed legal error in finding that plaintiffs proved knowledge of a defect.
4. The trial court committed legal error in finding liability on the part of Mike Anderson’s Seafood, Inc.
DISCUSSION
I. ADMISSIBILITY OF INSURANCE INVESTIGATOR’S FILE
Mike Anderson’s contends that the trial court erred by allowing into evidence the internal liability report/ claim file of *130 Lafayette’s investigator, Mr. Leblanc.[2] Mike Anderson’s argues: (1) the report is work product containing opinions on liability; (2) the report is work product because it was prepared in anticipation of litigation; (3) the report is hearsay; and (4) the prejudicial effect of the report outweighs its probative value. The first two reasons cited by Mike Anderson’s, which concern the report being work product and being prepared in anticipation' of litigation, are actually reasons the report should have been excluded from discovery[3] rather than reasons it should not have been admitted at trial. Discoverability and admissibility are two different issues. In essence, Mike Anderson’s argues, at least in part, that because the report should not have been | ¡¡discoverable, it should not have been admitted as evidence. We first address this argument.
We find that the trial court erred by admitting the report on the basis that this Court’s prior writ denials were the law of the case. First, the writ applications were not related to the admissibility of the report, but to its discoverability.[4] Second, even if any of the writ applications had addressed the admissibility of the report, this court’s writ denial would not be law of the case. “A denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction and does not bar consideration of the merits of the issue in which supervisory review has been denied when an appeal is taken from a final judgment.” State v. Whitton, 99-1958, p. 16 (La.App. 4 Cir. 9/27/00), 770 So.2d 844, 853 (citing State v. Wessinger, 98-1234 (La.5/28/99), 736 So.2d 162 and State v. Fontenot, 550 So.2d 179 (La.1989)). See also: State v. Williams, 2005-318, p. 3 (La.App. 5 Cir. 1/17/06), 921 So.2d 1033, 1035; State v. Thibodeaux, 97-1636, p. 11 (La.App. 3 Cir. 11/18/98), 728 So.2d 416, 422. The denial of a writ by an appellate court is nothing more than the appellate court declining to exercise its supervisory jurisdiction. An appellate court cannot affirm, modify or reverse a decision by a lower court without granting an application for supervisory review. The Louisiana Supreme Court addressed this very issue in Bulat v. Intracoastal Tubular Services, Inc., 2002-1035(La.6/14/02), 817 So.2d 1149, when it stated: “[H]aving declined to exercise its supervisory jurisdiction by denying the | fiwrit, the court of appeal was without jurisdiction to affirm, reverse or modify the judgment of the trial court.” In a subsequent decision, the Supreme Court reiterated:
The court of appeal erred in holding its earlier writ denial resolved the issue presented on appeal. In Bulot v. Intra-coastal Tubular Services, Inc., 02-1035 (La.6/14/02), 817 So.2d 1149, we held that once a court of appeal declines to exercise its supervisory jurisdiction by denying the writ, the court was without jurisdiction to affirm, reverse or modify the judgment of the trial court. Thus, any language in the court of appeal’s earlier writ denial purporting to find no *131 error in the trial court’s ... ruling is without effect.
Davis v. Jazz Casino Co., L.L.C., 2003-0276 (La.6/6/03), 849 So.2d 497, 498.
With this frame of reference, we consider the merits of Mike Anderson’s argument that the insurance investigator’s report was improperly admitted because it never should have been discovered in the first place. Mike Anderson’s argues that the report is work product because it contains opinions on liability and was prepared in anticipation of litigation. We agree. Louisiana Code of Civil Procedure article 1424 provides:
The trial court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusion, opinions, or theories of an attorney or an expert.
Pursuant to article 1424, prior to allowing discovery, the trial court was required to determine whether the information contained in Mr. Leblanc’s notes was prepared in anticipation of litigation, and if so, whether the denial of production would unfairly prejudice the Johnsons. The party seeking to avoid |7discovery of documents on the grounds that they were prepared or obtained in anticipation of litigation or in preparation for trial bears the burden of proving that the exception applies. Simmons v. Transit Management of Southeast Louisiana, Inc., 2000-2530, p. 3 (La.App. 4 Cir. 2/7/01), 780 So.2d 1074,1077. The trial court has the discretion to order the production of a writing prepared in anticipation of trial if it is convinced that the denial of production “will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice.” Hodges v. Southern Farm Bureau Casualty Insurance Company, 433 So.2d 125, 131 (La. 1983).
The document at issue here is the Liability Cap Report prepared by Mr. Leblanc following the receipt of notice for subrogation in a worker’s compensation claim. The report includes the adjuster’s opinion regarding the legal liability of the insured, what the adjuster believed the law of duty to be, and summaries of conversations Mr. Leblanc had with witnesses. The report also included the amount of insurance available to Mike Anderson’s and the amount reserved by Lafayette to pay the claim. This report is clearly a writing prepared by a party’s agent in anticipation of litigation.
Even though a document was obtained or prepared in anticipation of litigation or in preparation for trial, the party seeking discovery may be entitled to it in certain circumstances. That party must prove that he has a substantial need for the materials in the preparation of his case, and that he is unable to obtain a substantial equivalent of the materials by other means without undue hardship. Ogea v. Jacobs, 344 So.2d 953, 957 (La. 1977). Under this standard, the Johnsons failed to show that they would have been unfairly prejudiced by the denial of the document.
lain Ogea, the trial judge denied the plaintiffs motion for production of a job-site executive’s written accident report that contained data obtained from other employees as well as the executive’s opin *132 ions as to the basic cause of the accident. Id. at 955. During his deposition, the jobsite executive had several lapses of memory. Id. at 944-45. In addition to the executive’s lapses of memory, the plaintiff in the case had suffered a traumatic brain injury which left him unable to remember the events and facts surrounding the accident. Id. at 958. Finding for the plaintiff, the Louisiana Supreme Court held:
[T]he denial of the plaintiffs request for production of the accident report, containing as it does the results of Davis’ almost contemporaneous investigation into the causes, facts, and circumstances surrounding the plaintiffs injury, would unfairly prejudice the plaintiff in the preparation of his case, in view of his present inability, because of the passage of time and Davis’ lapses of memory, to obtain equivalent data equally likely to lead to the discovery of admissible evidence.
Id. at 959.
Similarly, in Simmons v. Transit Management of Southeast Louisiana, Inc., 2000-2530, pp. 4-5 (La.App. 4 Cir. 2/7/01), 780 So.2d 1074, 1077-78, we found that the plaintiff had shown that she would be unfairly prejudiced by the denial of production of an investigative report concerning her husband’s accident because her husband had died after the report was prepared but before the trial.
In the case before us, however, the record fails to demonstrate that the Johnsons made a showing of the level of unfair prejudice or injustice that was present in Ogea and Simmons. The Johnsons argue that they had a substantial need for the investigator’s file because they would be unfairly prejudiced had they not been able to know what Mr. Copping had said about the accident shortly after it happened. We find that the Johnsons did not meet their burden of proving ^substantial need or hardship. Mr. Johnson had his own independent recollection of the events. Mr. Copping was not an eyewitness to the accident, although he came upon the scene shortly after the accident occurred. Mr. Copping and the Lafayette investigator, Mr. Leblanc, were deposed. Both were available to and did, in fact, testify at trial.
Because we find that the trial court abused its discretion by ordering the production of the insurance investigator’s report during discovery, we also conclude that the admission of the report into evidence was error.[5] Our next inquiry is to determine whether this error was harmless.
An error is harmless when the verdict is “surely unattributable to the error.” State v. .Williams, 05-318, p. 4 (La. App. 5 Cir. 1/17/06), 921 So.2d 1033, 1036. “The test to be applied is whether the error was likely to have affected the final outcome of the trial so that it is reversible error instead of mere harmless error.” Smith v. Travelers, Ins. Co., 418 So.2d 689, 695 (La.App. 4th Cir.1982) (Garrison, J., dissenting), rev’d on other grounds, 430 So.2d 55 (La.1983).
We find that the error was harmless in the present case because essentially the same information found in the report was available to the jury through depositions and the testimony of the witness at trial. The synopsis contained in Mr. Leblanc’s internal report was not inconsistent with the recorded statement Mr. Copping gave to Mr. Leblanc, Mr. Copping’s depo *133 sition testimony, or, ultimately, his trial testimony. In the Liability Cap Report, Mr. Leblanc wrote,
[Mr. Copping] is aware that one aquarium did have a problem with the front case coming apart from the wall if it was dropping down hard. If it was eased down with your hand, it did not have a problem |infalling. He also said that he is certain that the claimant would also be aware of this.
Mr. Leblanc also wrote that, according to his knowledge at that point in time, Mike Anderson’s would have “some liability for this injury.” He expressly noted that there was a “hidden defect” and that at least one employee was aware of it. Mr. Leblanc explained that “there was a problem with the aquarium cover coming down because the nail would shake loose from a piece of wood when you would let the cover fall.” In a file status update included in his report, Mr. Leblanc wrote that he had spoken to Mr. Copping and that Mr. Copping was “all too eager to say that there is a defect in that aquarium cover and that everyone knew it.”
Mr. Leblanc took a recorded statement from Mr. Copping in October 2008. In this statement, Mr. Copping said that he did not remember the porthole falling down and striking anyone prior to this incident, nor did he remember the porthole coming completely off the chains and swinging down on any particular occasion. Mr. Copping told Mr. Leblanc that when he arrived on the scene of the accident, he could see that the frame was attached with smooth nails. He also stated that at some point after the accident, Mike Anderson’s repaired the frame and reattached it with screws.
During his deposition, Mr. Copping stated, “[T]he weight of the door ... the chains and bolts would not stop the thing from dropping. They would hold it in its place once you let it down, but it wouldn’t — if it just came down, it wouldn’t stop.” Mr. Copping stated that “it was a little risky [to open the porthole cover]. If you ... didn’t know how much the door weighed and you just went up there and just, you know, unlatched the ends of it.” When questioned as to whether he was aware of any instances in which the latches had given way and the drawbridge or . In porthole had fallen, Mr. Copping answered that he was not aware of any instances, but that when he was behind the bar he always made sure that the latches were locked. Again, this deposition testimony is essentially consistent with what Mr. Leblanc summarized in his report.
At trial, Mr. Copping testified that prior to the accident, while he never saw the frame fall off the front of the aquarium, “it was rumored that one of them did come down” and it was rumored to have hit someone.
Mr. Leblanc’s report does not contain any statements that Mr. Copping refuted in his recorded statement, his deposition testimony, or his testimony at trial. Mr. Copping testified that he was aware that a person had to be careful when lowering the porthole because it was heavy. Throughout Mr. Leblanc’s investigation, Mr. Copping was consistent in stating that he did not know of a specific prior incident when the porthole had fallen down and hit someone, saying only that there was a rumor of such an event having occurred prior to his employment at Mike Anderson’s.
Prior to admitting the Liability Cap report, the trial judge redacted from it the reserves and the amount of insurance coverage available to Mike Anderson’s for this claim. However, the court did not redact from the report Mr. Leblanc’s conclusion that Mike Anderson’s would have some liability for the injury. We find this to be *134 a legal error prejudicial to the defendants. However, weighing all of the evidence considered by the jury, we find the verdict to be unattributable to the error. Accordingly, we conclude that the error was harmless.
II. JURY’S FINDINGS
112Mike Anderson’s contends that the jury erred in finding that the plaintiffs proved the existence of a defect of which Mike Anderson’s had knowledge.[6]
Under Louisiana Civil Code article 2317.1, the owner or custodian of a building has a duty to keep its property free of vices or defects. To establish negligence under this article, the plaintiffs must prove the following: (1) that the defendant knew or should have known of the vice or defect; (2) that the damage could have been prevented by the exercise of reasonable care; and (8) that the defendant failed to exercise reasonable care. Keller v. Monteleon Hotel, 2009-1327, p. 4 (La.App. 4 Cir. 6/23/10), 43 So.3d 1041, 1043.
An appellate court’s standard of review of a jury’s factual findings is subject to the manifest. error standard of review. Green v. K-Mart Corp., 03-2495, p. 3 (La.5/25/04), 874 So.2d 838, 842. Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Cole v. State Dep’t of Pub. Safety & Con-., 2001-2123, p. 13 (La.9/4/02), 825 So.2d 1134, 1144. In order to reverse a trial court’s determination of fact, an appellate court must review the record in its entirety and find that a reasonable factual basis does not exist for the finding, and further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Id., p. 14, 825 So.2d at 1144.
A. The existence of a defect
Considering the evidence, we find that the jury did not commit manifest error in finding that a defect existed. Mr. Johnson testified that the porthole frame was attached to the cabinet by finishing nails and that the porthole hinges were not 1 ^attached to the cabinet. Mr. Copping testified that because the porthole was so heavy, the frame could become detached from the case. He stated that one had to lower it slowly to prevent it from pulling off of the wall completely.
In addition to the factual testimony, the Johnsons presented the testimony of Mr. Roy Carruba, an expert in the field of civil and structural engineering. Mike Anderson’s did not object to the court’s qualification of Mr. Carruba as an expert at trial. However, they allege that Mr. Carruba only offered his own personal opinions and conclusions, rather than objective standards necessary for the finding of a defect. See Carrier v. City of Amite, 2010-0007 (La.10/19/10), 50 So.3d 1247; Serou v. Touro Infirmary, 2012-0089 (La. App. 4 Cir. 1/9/13), 105 So.3d 1068. We disagree.
An essential element for liability is that the thing must have a ruin, vice, or defect. La. C.C. art. 2317.1. A defect in a thing exists when it is of the nature as to constitute a dangerous condition that would be reasonably expected to cause injury to a prudent person using ordinary care under the circumstances. Lasyone v. *135 Kansas City Southern R.R., 2000-2628, pp. 14-15 (La.4/3/01), 786 So.2d 682, 694.
Mr. Carruba based his opinion on his experience and expertise as a civil engineer, photographs of the aquarium, and the testimonies of Mr. Johnson, Mr. Copping, and Dr. Jerry Householder, the defendants’ expert, regarding the construction of the porthole. Mr. Carruba opined that finishing nails should not have been used in a frame that was built to support a fifty-pound glass and brass porthole door. He testified that the smoothness of finishing nails would cause them to pull out more easily from the wood than would nails with ridges or screws. |uHe also explained that finishing nails do not have heads, and that it is the head of a nail or wood screw that prevents it from being pulled through the wood. He specifically stated that the use of finishing nails on a fifty-pound door is a defect because finishing nails are not strong enough to keep the porthole frame from falling, and therefore the continual motion of opening and closing would eventually lead to the frame becoming detached from the wall. Mr. Carruba testified that the defect could have been corrected by attaching the frame to the cabinet with wood screws rather than finishing nails.
Mr. Carruba also testified that the fact that the hinges were not attached to the wood base and that the chains were not of the same length presented “an imminent danger of failure.” He explained that term by stating: “It was a failure mechanism that was going to present itself at some point in time.” He testified that the connecting of a structural element using an architectural fastener constituted a defect. Mr. Carruba concluded that, in this instance, the connection had loosened over time, and eventually it had failed.
Mr. Householder concluded that the use of nails to attach the aquarium frame to the wall was not a defect and satisfied the relevant building code. Although the conclusions of the defendants’ expert, Dr. Householder, differed from those of Mr. Carruba, this Court has found that “[w]here the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is most credible.” Schlesinger v. Herzog, 95-1127, p. 12 (La.App. 4 Cir. 4/8/96), 672 So.2d 701, 710 (citing Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1111 (La.1990)). In finding for the Johnsons, the jury chose to credit the testimony of Mr. Carruba over that of Dr. Householder. We find no manifest error in the jury’s finding of fact as to the existence of a defect.
|1SB. Knowledge of the defect
Mike Anderson’s also contends that the Johnsons did not meet their burden of proving knowledge of the defect, arguing that there was no testimony that Mike Anderson’s had prior knowledge of the use of the finishing nails. We do not find that the jury erred manifestly in this respect.
Although both experts testified that the use of the finishing nails would not have been obvious to the building occupant, Mike Anderson’s does not cite to any authority which states that the plaintiff must prove the defendant has detailed knowledge of the specific problem causing the defective condition. Only knowledge of the condition, not the cause of the condition, is an essential element for finding liability.
Mr. Copping, who had worked at Mike Anderson’s for twelve years and was responsible for feeding the fish, testified that he knew that the porthole had to be lowered a certain way to prevent it from detaching from the wall. Mr. Copping testified that he had heard a rumor that *136 one of aquarium covers had fallen down and had hit someone. In his deposition, Mr. Copping acknowledged that it was risky to open the aquarium door and indicated that because of the door’s weight, the chains and bolts would not hold it if it came down quickly, as opposed to someone slowly and carefully lowering it. He also stated that because of this knowledge, he always made sure the latches were locked when he was behind the bar. In reviewing the record, we cannot conclude that the jury committed manifest error in finding that Mike Anderson’s had knowledge of a defective condition.
III. Liability of Mike Anderson’s Seafood, Inc.
Mike Anderson’s Seafood, Inc. contends that the jury erred in finding liability on its part because the actual lessee of the building where the incident 11fioccurred was its codefendant, Mike Anderson’s Seafood of New Orleans, Inc. The crux of this argument is that Mike Anderson’s Seafood, Inc., had no responsibility for the New Orleans location and was not the custodian of the aquarium cabinet door that failed.[7]
At trial, Mike Anderson’s Seafood, Inc. failed to present any evidence that it should be singled out from its co-defendants. The three defendants did not differentiate between themselves at trial. They shared the same counsel, who referred to all defendants collectively as “Mike Anderson’s.” Although Mike Anderson’s Seafood of New Orleans, Inc. was the lessee of the Bourbon Street location where the accident occurred, Mike Anderson’s Seafood, Inc. was the insured on the Lafayette Insurance policy. The Lafayette policy describes three premises, including the Bourbon Street location. Mike Anderson’s was operated as one entity, with a home office in Baton Rouge and three restaurant locations.
In the percentages of fault category on the jury verdict form, the defendants are listed as one defendant: “Mike Anderson’s Seafood, Inc. and/or Mike Anderson’s Seafood of New Orleans, Inc.” Defendant’s counsel did not object to the verdict form. This court generally does not consider on appeal issues that were not before the trial court. We therefore find that defendants have waived consideration of this issue on appeal.
CONCLUSION
For the reasons stated, we affirm the judgment of the trial court.
AFFIRMED.

. Mr. Copping was a bartender employed by Mike Anderson’s when the accident occurred. He was present at the restaurant when the accident took place, but was not an eyewitness.

. The document admitted into evidence, entitled "Liability Claim Report,” included the contents of Mr. Leblanc's claim file except for the portions relating to coverage and reserves that the trial court had ordered redacted.

. See La. C.C.P. art. 1424.

. The subject of the first writ application was the propriety of an in camera inspection of the report/file by the trial court, and the subject of the second writ application was its discoverability (the trial court's ruling that the report, as redacted, be produced in response to plaintiffs' discovery request). See Johnson v. Mike Anderson’s, 2011-C-0075 (La.App. 4 Cir. 2/16/11) (unpub), and Johnson v. Mike Anderson’s, 2011-C-0721, (La.App. 4 Cir. 7/27/11) (unpub).

. In view of this conclusion, we pretermit consideration of the appellant’s additional arguments regarding whether the report was inadmissible as hearsay and/or because its probative value was outweighed by its prejudicial effect.

. We reject Mike Anderson’s argument that we should review the jury's findings de novo because of an alleged legal error. The alleged failure of the plaintiffs to present any evidence that an unreasonable condition existed on the premises would not constitute a legal error.

. Prior to trial, defendant Mike Anderson’s Seafood, Inc. filed, and then withdrew, a motion for summary judgment seeking its dismissal.