PATRICIA RIVET MURRAY, Judge.
_|jThis matter is before this court en banc on remand from the Louisiana Supreme Court to resolve a conflict between two of this court’s writ dispositions: Knight v. Edwards, 10-1474 (La.App. 4 Cir. 1/7/11 )(unpub.), writ denied, 11-0245 (La.3/4/11), 58 So.3d 479 (the “Knight case”); and Bernard v. Ellis, 10-1495 (La. App. 4 Cir. 1/25/11 )(unpub.), writ granted, 11-0329 (La.3/31/11), 60 So.3d 1239 (the “Bernard case”). Imperial Fire & Casualty Insurance Company (“Imperial”) is the Relator in both writs. Both writs seek review of a trial court’s judgment denying Imperial’s motion for summary judgment on an insurance coverage issue.[1]
The Bernard and the Knight cases involved the same factual scenario: a two-vehicle accident that occurred when Imperial’s insured was driving her vehicle, and nonresident relative guest passengers were riding with her in her vehicle. In both cases, the guest passengers filed suit against, among others, Imperial in its capacity as the named insured’s liability insurer. The guest passengers averred that they were covered under the uninsured or underinsured motorist (“UM/UIM”) provision of Imperial’s policy. Imperial re *71 sponded by filing |2a motion for summary judgment contending that its policy does not provide UM/UIM to the guest passengers. In support, Imperial cited the definition of an insured in the UM/UIM portion of its policy, which does not include nonresident relative guest passengers.[2] In both cases the trial court denied Imperial’s motion for summary judgment. Seeking review of those rulings, Imperial filed an application for supervisory writ in each case.
A three-judge panel of this court in the Knight case granted Imperial’s writ and held that the guest passengers were not entitled to UM/UIM coverage. The panel reasoned that “the liability portion and the uninsured motorist portion of the Imperial Policy present two distinct definitions of ‘insured persons.’ ” The panel further reasoned that “plaintiffs’ attempts to use the definition of ‘insured person’ found in the liability portion of the policy is in error.” The panel still further reasoned that “Imperial’s provision limiting coverage to ‘insured persons’ under the uninsured motorist section of its policy is only extended to those who reside in the same household and are blood related; the plaintiffs do not meet this criteria.” The panel thus concluded that Imperial was entitled to summary judgment based on “[a] clear reading of the policy in conjunction with the law.”
Another three-judge panel of this court in the Bernard case denied Imperial’s writ and held that the guest passengers were entitled to UM/UIM | .^coverage. The panel reasoned that the guest passengers fall within the definition of “insured persons” under the omnibus provision of the liability portion of the policy, which defines “insured person” or “insured persons” to mean “[a]ny person with respect to an accident arising out of that person’s use of a covered vehicle with the express or implied permission of you.” The panel further reasoned that the word “use” of a vehicle includes the act of riding in the vehicle as a passenger; the panel explained:
The Imperial policy does not define the term “use.” The jurisprudence has construed the term “use” as not limited to driving the vehicle. See Bolton v. N. River Ins. Co., 102 So.2d 544, 545 (La.Ct.App.l958)(holding that “use” included a back-seat passenger who slammed the door of the automobile on the plaintiffs hand); Home Indent,. Co. v. Lively, 353 F.Supp. 1191, 1193 (W.D.Okla.l972)(citing Bolton, supra, and noting that “[i]t is well settled that a passenger in a car as distinguished from the driver thereof may be using the vehicle.”) The purpose of liability insurance is to afford the insured protection from damage claims; therefore, insurance contracts should be interpreted to effect, not deny, coverage. Yount v. Maisano, 627 So.2d 148 (La.1993).
Noting that it was “Illiberally construing the policy,” the panel held that the guest passengers were “insured persons” under the liability portion of the policy and thus were entitled to UM/UIM coverage under the policy.
*72 The Louisiana Supreme Court denied writs in the Knight case, granted writs in the Bernard case, and remanded the Bernard case with instructions that this court en banc reconcile its holding in the Bernard case with its holding in the Knight case. The Supreme Court also asked this court to consider the effect, if any, of the 2009 amendment to La. R.S. 22:1282. On remand, this court en banc entertained additional oral and written arguments from the parties.
In its supplemental brief on remand, Imperial contends that even assuming the guest passengers were using the vehicle, as this court found in the Bernard |4case, the definition of an “insured person” at issue contains an additional requirement that the “accident arise out of that person’s use.” Imperial contends that it cannot be concluded that the accident arose out of the guest passengers’ mere riding in the vehicle. In support of its position, Imperial cites the First Circuit’s recent decision in Batiste v. Dunn, 10-1812 (La. App. 1 Cir. 6/10/11), 68 So.3d 673.
The Batiste case involved the same factual scenario and policy provisions at issue in the Bernard and Knight cases.[3] In the Batiste case, the First Circuit, with one judge dissenting, affirmed a judgment granting Imperial’s motion for summary judgment on the same coverage issue. The First Circuit reasoned that “[t]o find that plaintiffs were ‘using’ the vehicle simply because they were riding as guest passengers would require a strained interpretation inconsistent with the meaning of the word and beyond what could have been contemplated by the parties.” Batiste, 10-1812 at p. 4, 68 So.3d at 677. The court further reasoned that even assuming the passengers were using the vehicle, the accident did not arise out of their use. The court still further reasoned that the “use” provision is “designed to limit coverage to liability resulting from conduct of the insured which constitutes both a use of the vehicle and a legal cause of the injury.” Id. Based on this reasoning, the court held that the guest passengers who were riding in the insured vehicle did not legally cause or contribute to the accident, did not fall within the definition of “insured persons” for. purposes of liability coverage, and thus are not entitled to UM/UIM coverage.
|fiWe are not bound by and decline to follow the Batiste case. The omnibus provision in the liability portion of Imperial’s policy defines an insured as “any person with respect to an accident arising out of that person’s [permissive] use of a covered vehicle.”[4] As we stated in our prior writ disposition in the Bernard case, use includes riding as a passenger. But for the guest passengers’ permissive use of the covered vehicle — riding in the insured’s vehicle when the accident occurred — they would not have been injured. Liberally construing the policy language, we hold that the guest passengers fall within the definition of “insured persons” for purpose of liability coverage and thus are entitled to UM/UIM coverage.
Our finding is buttressed by the policy considerations underlying mandatory UM *73 coverage and inherent in the 2009 amendment to La. R.S. 22:1282, which the Supreme Court instructed we consider on remand.[5] Discussing the policy considerations, we noted in a footnote in our prior writ disposition in the Bernard case that “a contrary holding would result in the anomaly of allowing the driver to recover, but the driver’s two innocent guest passengers to have no recourse.” We further noted that “[t]his anomalous result is inconsistent with the underlying purpose of mandatory uninsured motorist coverage.” Judge Bonin expressed the Rsame policy considerations in his concurrence to the prior writ disposition. Based on the policy considerations, a liberal construction of Imperial’s policy, and the jurisprudence, we again deny Imperial’s writ application in the Bernard case and overrule en banc our contrary writ disposition in the Knight case.
WRIT DENIED.
McKAY, J., concurs.
BONIN, J., concurs with additional reasons.
ARMSTRONG, C.J., dissents.
JONES, J., dissents.
BAGNERIS, J., dissents with reasons.
LOVE, J., dissents and assigns reasons.
TOBIAS, J., dissents and assigns reasons.
McKAY, J., concurs. hi would deny this writ.
BONIN, J., concurs with additional reasons.
hi join fully in the majority opinion. I write separately to address additional considerations which support the majority opinion and answer the views expressed in the dissenting opinions. Also, I write to address more fully the Supreme Court’s directive concerning the 2009 amendment to La. R.S. 22:1282.
Despite the increasingly stringent enforcement of compulsory motor vehicle liability insurance laws nationally and in Louisiana, about one in seven motorists remains uninsured.[1] It is- not surprising then that “[i]n Louisiana, UM coverage is provided by statute and embodies a strong public policy.” Roger v. Estate of Moul-ton, 513 So.2d 1126, 1180 (La.1987) (on original hearing). “[T]he requirement that there be UM coverage is an implied amendment of any automobile liability policy, even one which does not expressly address the subject matter, as UM cover *74 age will be read into the policy unless validly rejected.” Id.
1
I begin by emphasizing that the majority opinion properly decides the issue presented in this case as one of interpretation of an insurance policy. This is the precise issue which Imperial Fire presents in this case, and presented in Knight v. Edwards, 10-1474 (La.App. 4 Cir. 1/7/11) (unpub.), writ denied, 11-0245 (Lag/4/11),2 58 So.3d 479, and Batiste v. Dunn, 10-1812 (La. App. 1 Cir. 6/10/11), 68 So.3d 673, writ application pending, 2011-C-1498 (La.7/8/11). In this case, the majority correctly addresses the particular policy’s definition and provision regarding who is insured under the liability coverage.
If a motor vehicle liability insurance policy provides UM coverage, then any person covered (or insured) under the liability provisions is ipso facto an insured for UM purposes. See La. R.S. 22:1295(l)(a)(i) (governing issuance of UM coverage: “No automobile liability insurance covering liability arising out of the ... use of any motor vehicle ... unless [uninsured motorist] coverage is provided therein ... for the protection of persons insured thereunder who are legally entitled to recover ...” (emphasis added)). “In other words, any person who enjoys the status of insured under a Louisiana motor vehicle liability policy which includes uninsured/underinsured motorist coverage enjoys coverage protection simply by reason of having sustained injury by an uninsured/underinsured motorist.” Howell v. Balboa Ins. Co., 564 So.2d 298, 301-302 (La.1990).
Thus, “any determination of whether a plaintiff is entitled to UM benefits must follow a determination that the plaintiff is an insured for the purposes of auto liability insurance coverage.” Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, 196 (emphasis added). Notably, Imperial Fire agrees with this formulation of the controlling law and restricts its argument to whether these guest passengers are covered under the liability provisions of its policy.
There is no question that if the definition of an insured under the policy’s more restrictive UM provisions controls the outcome of this controversy, then these guest passengers would not be covered. But those provisions are not dispositive in this case. Imperial Fire’s argument is that these guest passengers are neither covered under the policy’s UM provisions, which is uncontested, nor under | sthe policy’s liability provisions, which is contested. Thus, the dissent of JUDGE BAGNERIS, in my view, somewhat misses the mark in relying upon the policy’s UM definition to exclude these guest passengers from coverage or, more importantly, to restrict UM coverage because the Louisiana Supreme Court “has already determined that an insurance company may not impose coverage limitations that are more restrictive than the coverage implicitly required by a state uninsured motorist statute.” Jones v. Henry, 542 So.2d 507, 509 (La.1989), citing to Breaux v. Government Emp. Ins. Co., 369 So.2d 1335 (La.1979). See also Bond v. Commercial Union Assur. Co., 407 So.2d 401, 409 (La.1981) (on rehearing) (noting that because the principal elements of UM coverage are prescribed by law, “[a]ny clause in an insurance contract in derogation of the mandatory requirements set forth in the statute is invalid insofar as it conflicts with the law.”)[2]
*75 Insurers are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume unless there is a conflict with statutory provisions or public policy. See Louisiana Ins. Guar. Ass’n. v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 680 So.2d 759, 763. The dissent’s position does not consider that Imperial Fire may not limit its UM responsibility to its policy’s UM provisions when they conflict with the requirement of statute or public policy.
The majority opinion, however, correctly looks to the definition of the liability insureds for a determination whether the plaintiffs are protected by the UM coverage while using the covered vehicle.[3]
Ji.[2]
While the majority opinion does reject the argument that the policy’s UM coverage provisions can be more restrictive than the legal mandate of UM coverage for those insured under the policy’s liability provisions (who are using the covered vehicle), the majority opinion does not rest on the proposition that the law in effect at the time of this motor vehicle accident mandated UM coverage to guest passengers, as the dissent of Judge Tobias suggests.
“Parties are free to contract for any object that is lawful, possible, and determined or determinable.” La. Civil Code art. 1971. There is no question that at the time of this accident an insurance policy could have restricted its liability coverage to only persons operating the covered vehicle. See Taylor v. Rowell, 98-2865 (La.5/18/99), 736 So.2d 812.
In Taylor v. Rowell, the rental car agency’s insuring agreement restricted liability coverage to authorized operators and did not provide the rejection of UM coverage, which was not contractually provided. Id. at 815. There were two issues which arose from the insuring agreement: whether UM coverage was provided as a matter of law to the persons covered by liability insurance (i.e., the authorized operators) and, if so, whether it also extended to guest passengers. Id. at 817-818. The Supreme Court decided that, in the absence of a valid rejection, “rental car agencies are required to provide uninsured motorist coverage to insureds under the rental agreement.” Id. at 818. But, the Supreme Court further decided that “[tjhis mandatory UM coverage does not extend to guest passengers in the rental vehicle unless they are covered as insureds under the rental agreement. ” Id. (emphasis added).
|fiThus, Taylor v. Rowell does not mandate as a matter of public policy the extension of UM coverage to guest passengers who are not insureds. And the majority opinion does not rest on such premise. Thus, had this policy provided that liability coverage was restricted to a circumstance “arising from the operation of the covered vehicle,” then it would be true that these guest passengers would not be insureds and thus not entitled by operation of law to UM protection. But, of course, that is not what this policy provided; it more broadly provided protection to circumstances “arising from the use of the covered vehicle.” *76 The “unless” proviso of Taylor v. Rowell controls because these guest passengers were contractually included as liability insureds.
8
The particular policy provision requiring that an accident arise out of the use of the automobile is no stranger to Louisiana courts. It, or a similar version, not only routinely and generally appears in automobile liability policies to provide for coverage, but is often found in general liability policies to provide for exclusion of coverage.[4]
The third circuit has on two occasions, for example, considered the policy liability provision “using” to apply to guest passengers such that UM coverage would have been extended; the third circuit found that an “occupant” is “using” the vehicle. See Stunkard v. Langlinais, 97-1006 (La.App. 3 Cir. 2/4/98), 708 So.2d 1117, 1120, and Stewart v. Robinson, 521 So.2d 1241, 1245 (La.App. 3rd Cir.1988). Notably, in Stun-kard, because the guest passenger was occupying or using a covered vehicle, UM coverage was afforded, but in Stewart, even though the guest passenger was using the vehicle, UM coverage was denied only because the |fivehicle which was occupied was not a covered vehicle for liability coverage. See discussion in Part 1, ante.
“The issue of whether an accident arises out of the use of a vehicle has been much litigated.” Shelby McKenzie and Alston Johnson, III, La. Civil L. Treatise, Insurance Law & Practice § 117 (3d ed.). The commentators illustrate their point by discussing, among other cases, Cagle v. Playland Amusement, Inc., 202 So.2d 396, 401 (La.App. 4th Cir.1967), and Speziale v. Kohnke, 194 So.2d 485 (La.App. 4th Cir. 1967). In Cagle this court found a security guard’s accidental shooting of another person to be “arising out of use” of a vehicle because the guard was using his gun to break the ear’s window in an attempt to help the victim gain entry to the car. There, our court used the “reasonable interpretation” standard it established earlier that year in Speziale, reasoning that if injury caused by closing a door arose out of the use of the vehicle, then injury caused by attempting entry into a vehicle should also be seen to arise out of the use of the vehicle. Id. In Speziale this court found that injuries resulting from striking people with fireworks that were thrown out of a moving vehicle were not injuries “arising out of the use” of that vehicle. 194 So.2d at 487-88. Concerning interpretation of the phrase “arising out of,” this court stated that the phrase should not be read so narrowly as to mean “directly caused by the automobile itself,” nor should it be read so broadly as meaning “while using.” Id. at 487. The fact that the injury was caused by a “voluntary, deliberate act on the part of the automobile passenger ... along with the entire set of circumstances, remove[d] the con-nexity of the incident with the use of an automobile to the realm of insignificance.” Id.
These kinds of unusual, perhaps even rare, factual situations, however, are not present here. This is an ordinary motor vehicle accident in which the innocent guest passengers are simply riding in (i.e. using) the covered vehicle. Their use of |7the covered vehicle is about as ordinary and mundane as the primary use of any *77 vehicle — a means of conveyance from one place to another.
Until the first circuit’s split decision in Batiste v. Dunn, there was not a single published court decision which interpreted the particular policy language of this policy to exclude guest passengers from UM protection because they were simply occupying a covered vehicle conveying them from one place to another.[5] The majority opinion, and not the majority opinion in Batiste v. Dunn, has correctly applied the legal precepts for interpretation of this contract of insurance. An insurance policy as a nominate contract is subject to the general principles concerning contracts set forth in the Civil Code and to some special rules “when those rules modify, complement, or depart” from the more general codal articles. See La. Civil Code arts. 1914 — 1916; La. R.S. 22:881; Cadwallader v. Allstate Ins. Co., 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580.
Our civilian code further addresses contract interpretation. La. Civil Code art. 2051 states: “Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include.” “When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La. Civil Code ART. 2046; see also Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94), 632 So.2d 736, 741 (stating: “An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.”).
The strained interpretations are the ones which assert that a passenger being conveyed in a covered vehicle is not “using” the vehicle or that his injuries |ssustained such as those in this case do not arise of his use of the covered vehicle. Thus, when the wording is clear, the court lacks authority to alter or change the terms of the policy under the guise of interpretation. See Sher v. Lafayette Ins. Co., 07-2441, p. 5 (La.4/8/08), 988 So.2d 186, 192-93; Louisiana Ins. Guar. Ass’n, supra, 93-0911 p. 5, 630 So.2d at 763.
4
The Supreme Court in its remand instructions directed that we consider what, if any, effect the 2009 amendment to La. R.S. 22:1282 may have on this decision. The majority opinion succinctly stated that it had no effect. Thus, the majority opinion properly did not explore the meaning and effect of the amendment.
After the dates of the issuance of Imperial Fire’s policy and of the accident, La. R.S. 22:1282 was amended by inserting only the italicized language so that it now reads:
No motor vehicle liability insurance policy nor any uninsured motorist coverage for bodily injury shall limit the coverage of, or the amount that can be recovered by, the named insured, or the spouse or other family member of the named insured, or express or implied permissive users, for whom the policy provides coverage, to any amount less than the highest policy limit provided in the policy for the respective coverage or potential recovery. Any recovery is limited to damages actually sustained. Any provision of a motor vehicle insurance policy issued in, or for delivery in, the state of *78 Louisiana that is not in accord with this Section is contrary to the public policy of this state and shall be null, void, and unenforceable.
In my view, the insertion of the language “or express or implied permissive users” calls into question the post-amendment authoritative viability of Taylor v. Rowell, supra, Lindsey v. Colonial Lloyd’s Ins. Co., 595 So.2d 606 (La.1992), and Blackburn v. National Union Fire Ins. Co. of Pittsburgh, 00-2668 (La.4/3/01), 784 So.2d 687.
|9The amendment expands minimum mandatory UM protection from named insureds along with the spouse and family members to all permitted users.
The 2009 amendment is an explicit statement of public policy. But, because the statute as substantively amended would seem to require an insurer to provide UM coverage to any permissive user of the covered vehicle regardless of the policy’s provisions regarding liability insureds, its retroactive application might facially appear to violate Article I, § 10, Clause 1 of the Constitution of the United States, which prohibits states from passing any “Law Impairing the Obligation of Contracts.” See Northshore Cycles, Inc. v. Yamaha Motor Corp., U.S.A., 919 F.2d 1041, 1042-43 (C.A.5, 1990). See also La. Const, art. I, § 23 (“No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted.”)
Nevertheless, even if the amended version of § 1282 is not applicable to the facts of this case, because it represents public policy expressed by the legislature in this area, it can be considered by the courts. See Pinkney v. Progressive Specialty Ins. Co., 597 So.2d 1168, 1172 (La.App. 1st Cir.1992). And, in that regard, it can be stated assuredly that there is nothing whatsoever in the majority opinion which is “incompatible with the aim of the uninsured motorist insurance statute” or with the more recent declaration of public policy. See Carona v. State Farm Ins. Co., 458 So.2d 1275, 1278 (La.1984).
Because this contract of insurance, as properly interpreted and applied, already comports with the Lawmaker’s public policy, we properly have not expressed an opinion as to whether a policy with different and more restrictive coverage language would be enforceable as against public policy.
5
Because Imperial Fire had not established on its motion for summary judgment that these plaintiffs were not insureds under the liability provisions of this policy, or that they were not using or occupying an insured vehicle, the trial | mjudge was correct to grant the motion for new trial because the summary judgment is “clearly contrary to the law and the evidence.” LA. C.C.P. ART. 1972(1).
I, therefore, concur in our affirming the trial court’s ruling.

. In the Bernard case, the trial court initially granted Imperial's motion for summary judgment. However, the trial court granted the plaintiffs' (the guest passengers’) motion for new trial, which had the same effect as denying Imperial’s motion.

. The definition of an "insured” under the UM/UIM portion of the policy is as follows:
"Insured person” and "insured persons” mean:
1. you or a person residing in the same household as you, and related to you by blood, marriage, or adoption, including a ward, stepchild, or foster child; and
2. any person who is entitled to recover damages covered by this Part C because of bodily injury sustained by a person described in 1 above.
The term “you” is defined to mean "[t]he person shown as the named insured on the Declaration’s Page, and that person’s spouse if residing in the same household and holding a valid driver’s license.”

. Procedurally, the Batiste case is distinguishable from the Bernard and the Knight cases in that it involved an appeal from a judgment granting Imperial’s motion for summary judgment.

. An "omnibus clause” in an insurance policy broadens the term "insured” to include "not only the named insured, but also any other person while using the named insured’s vehicle, provided the use of the vehicle is with the named insured’s permission or consent.” Collins v. Farris, 03-1991, p. 5 (La.App. 1 Cir. 11/3/04), 897 So.2d 634, 639.

. The amendment added "express or implied permissive users” to the statute. As amended, the statute provides:
No motor vehicle liability insurance policy nor any uninsured motorist coverage for bodily injury shall limit the coverage of, or the amount that can be recovered by, the named insured, or the spouse or other family member of the named insured, or express or implied permissive users, for whom the policy provides coverage, to any amount less than the highest policy limit provided in the policy for the respective coverage or potential recovery. Any recovery is limited to damages actually sustained. Any provision of a motor vehicle insurance policy issued in, or for delivery in, the state of Louisiana that is not in accord with this Section is contrary to the public policy of this state and shall be null, void, and unenforceable.
La. R.S. 22:1282 (emphasis supplied). The underlying accidents in the Bernard and the Knight cases occurred before the effective date of the amendment to the statute. Because the amendment was substantive and not made retroactive, it is not applicable to either case.

. See study of Insurance Research Council, Uninsured Motorists, 2011 Edition (www. ircweb.org).

. Conversely, a person not insured for liability purposes is not an insured for UM purposes. See Filipski v. Imperial Fire & Cas. Ins. Co., 09-1013, p. 5 (La. 12/1/09), 25 So.3d 742, 745 (“This jurisprudence leads to the inescapable conclusion that a person who is not insured *75 for liability purposes cannot be considered an insured for UM purposes.”)

. These injured plaintiffs could not recover, of course, under the UM coverage if they were using a vehicle other than the covered vehicle. This is what distinguishes our factual situation from that of, for example, Cadwallader v. Allstate Ins. Co., 02-1637 (La.6/27/03), 848 So.2d 577, and from Seaton v. Kelly, 339 So.2d 731 (La. 1976). A policy’s UM definitions control who is covered when using a vehicle not covered by its liability provisions. That is the situation when the policy follows the person and not the insured vehicle.

. “Policies frequently define ‘use’ to include the loading and unloading of an automobile. Conversely, many other liability policies, including homeowners policies and commercial general liability policies, expressly exclude coverage for liability 'arising out of the ... use ...' of vehicles.” Shelby McKenzie and Alston Johnson, III, La. Civil L. Treatise, Insurance Law & Practice § 65 (3d ed.).

. See, however, Treadaway v. Progressive Northwestern Ins., 97-2356 (La.App. 4 Cir. 9/9/98), 720 So.2d 693, a divided panel in which a named insured was precluded from UM coverage because the covered vehicle was being operated by his wife, who was an excluded driver under the policy.