PAUL A. BONIN, Judge.
h OneBeacon America Insurance Company is sued under the Direct Action Statute in its multiple capacities as the liability insurer of Avondale Industries, Inc. and eleven of its executive officers. OneBea-con concedes that Orleans Parish is proper venue against it for the plaintiffs’ survival action claims against it in its capacities as insurer of Avondale Industries and of five of the executive officers. But OneBeacon in its capacities as insurer of the remaining six executive officers raised' the objection of improper venue.
The trial judge sustained OneBeacon’s declinatory exception and dismissed the suit without prejudice against OneBeacon in its specified capacities. The suit against OneBeacon in its other capacities remains pending in Orleans Parish. The plaintiffs, who have been substituted for the now-deceased original plaintiff, Roy Blow Jr., applied for supervisory review.[1]
We granted a writ of certiorari, ordered the district court record to be filed, and scheduled oral argument on an expedited basis to resolve the issue without | ^interfering with the impending trial date. On our de novo review of the judgment, we conclude that the trial judge correctly sustained the exception of improper venue. But, because we find that dismissal without prejudice, was not the only remedy available under La. C.C.P', art. 932 B, we amend the judgment'to delete the dismissal with prejudice and remand the matter to the district court with instructions.
We explain our decision in considerably more detail below.
I
Before' we treat the substantive issue presented in this matter, we address our decision to grant the writ of certiorari. There are two aspects to our decision in this case.
*247 A
First, as the Supreme Court-has made clear, under current procedural law an adverse ruling on venue is interlocutory in nature. See Land v. Vidrine, 10-1342, p. 5 (La.3/15/11), 62 So.3d 36, 39; Savoie v. Rubin, 01-3275, 01-3276, p. 3 (La.6/21/02), 820 So.2d 486, 488. Thus, in order to obtain review of the ruling, the party adversely affected thereby must immediately apply for supervisory relief.[2] |aSee Land, 10-1342, p. 7, 62 So.3d at 40-41. The party may not await the rendition of a,final judgment which adjudicates all issues as to all parties and, then request appellate review as is otherwise available with respect to other interlocutory rulings. See La. C.C.P. art. 1915 B(2); Favrot v. Favrot, 10-0986, p. 2 (La.App. 4 Cir. 2/9/11), 68 So.3d 1099,1102 n. 1; People of the Living God v. Chantilly Corp., 251 La. 943, 207 So.2d 752 (La.1968).
In exercising our discretion whether to grant supervisory review in civil cases, we are .especially influenced- by a relator’s showing that the interlocutory ruling complained of should be immediately corrected either because the ruling likely would cause “irreparable harm” or the well-known Herlitz factors are present. See Herlitz Const. Co., Inc.v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981) (“When the overruling of the exception is arguably incorrect, when a reversal will terminate the' litigation;, and when there is no dispute of fact to be resolved, judicial efficiency and fundamental fairness to the litigants dictates- that the merits of the application for supervisory writs should be decided in an attempt to avoid the waste of time and expense of a possibly useless future trial on the merits.”); Whitney Nat. Bank v. Rockwell, 94-3049, p. 6 (La.10/16/95), 661 So.2d 1325, 1329. n, 3; Gerrets v. Gerrets, 06-0087, p. 4 (La.App. 4 Cir. 1/10/07), 948 So.2d 343, 346. See also Tsegaye v. City of New Orleans, 15-0676, p. 7 (La.App, 4 Cir. 12/18/15), 183 So.3d 705, 711 n. 4 .(“We" have previously suggested that an intermediate appellate court, when confronted with the confluence of \ ¿Herlitz factors in an application for the exercise of its discretionary supervisory jurisdiction, may abuse its discretion when it fails to exercise its supervisory jurisdiction to review the application.”).
Traditionally, we have viewed an interlocutory ruling on venue as one which may cause irreparable harm. Indeed, before the amendment to La. C.C.P. art.2083 in 2005, such a ruling was entitled to an appeal of right.' See Crawford v. Blue Cross and Blue Shield of Louisiana, 00-2026, p. 12 (La.App. 4 Cir. 12/5/01), 814 So.2d 574, 581. Although a litigant’s right *248 to appeal an adverse ruling on venue was removed by the amendment, we still carefully review such applications for irreparable harm. See Gerrets, 06-0087, p. 4, 948 So.2d at 346. The notion of “irreparable harm” in the venue context should not be overstated. We are confident that the parties can receive fair treatment in any court; venue is primarily a device for the allocation of cases. See Land, 10-1342, p. 7, 62 So.3d at 40-41. Our procedural scheme, however, strongly (but not inflexibly) favors the plaintiffs selection of a forum of proper venue. See Osborn v. Ergon Marine & Industrial Supply, Inc., 12-0183, p. 1 (La.4/13/12), 85 So.3d 687. Thus, when a ruling dislodges a plaintiffs suit from the forum selected by him, as this ruling does, we are careful to examine the support for such a ruling.
Here, too, the Herlitz factors counseled granting the application. The parties agree that the facts are undisputed. The issue to be decided is a question of law. See Gerrets, 06-0087, p. 4, 948 So.2d at 346 (“Venue is a question of law— Accordingly, we will review the trial court’s granting of Defendant’s Exception of |¡¡Improper Venue de novo.”). And the relators set out in their application their not insubstantial arguments that the ruling is incorrect.
Thus, we found it appropriate to grant the writ of certiorari and fully consider the merits of the application.
B
Second, the relators have pointed out to us in their application that the same legal issue has re-occurred in previous or pending applications for supervisory writs and that there has been some inconsistency in result.
In two of the cases, we declined to exercise our supervisory jurisdiction.[3] In the earlier one, the district court sustained the exception of improper venue. See Walker v. Avondale Industries, Inc., unpub., 11-0991 (La.App. 4 Cir. 9/14/11) (McKay, C.J., dissenting). In the later one, the district court denied the exception of improper venue. See Landry v. Northrop Grumman Industries, Inc., unpub., 15-1188 (La.App. 4 Cir. 2/2/16) (Landrieu, J., dissenting).
In one of the cases, we peremptorily exercised our supervisory jurisdiction, reversed the ruling denying the exception of improper venue, and remanded the matter to the district court to transfer the case as to OneBeacon as insurer of Avondale Industries and its executive officers. See Hebert v. Avondale Industries, Inc., un-pub., 13-0225 (La.App. 4 Cir. 4/25/13) (McKay, C.J., and Belsome, J., dissenting).[4]
Notably, all three previous dispositions, whether exercising our jurisdiction or declining to exercise it, are the product of split panels. And, more importantly for present purposes, because of the varying outcomes, we, the panel members, referred *249 the opinion to the judges en banc, seeking to resolve the precise issue presented in our circuit with a published opinion with a result that is authorized by the judges en banc, acting pursuant to our internal operating procedures. See Bernard v. Ellis, 10-1495 (La.App. 4 Cir. 9/27/11), 76 So.3d 69; State v. Cobb, 13-0431 (La.App. 4 Cir. 6/25/14), 161 So.3d 28 (on re hearing); Roundtree v. New Orleans Aviation Bd., 04-0702, pp. 9-10 (La.App. 4 Cir. 2/4/06), 896 So.2d 1078, 1085 n. 17.
Having now submitted this opinion to the Court en banc and having sought authorization by majority vote to release the opinion, we report that the court, by a 7-4 vote, has authorized the release. The recorded votes of the individual twelve judges are recorded in the footnote.[5] Also, under our internal operating procedures, any judge who is not already on the three-judge panel may also submit for release a concurring or dissenting opinion.
Jl11
We ground our resolution of this writ application upon the terms of the Louisiana Direct Action Statute’s venue provisions, which are codified in Section 1269 B of Title 22 of the Louisiana Revised Statutes. We begin our discussion by examining the statute’s relevant provisions. And because the retroactivity vel non of certain legislative amendments to the statute are at issue, we also study its pertinent legislative modifications.
The Direct Action Statute grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured. See Green v. Auto Club Group Insurance Co., 08-2868, p. 3 (La.10/28/09), 24 So.3d 182, 184 (citations omitted). The Statute “was enacted to give special rights to tort victims, not to insureds with contract claims against a defendant.” Cacamo v. Mut. Fire Ins. Co., 99-3479, p. 3 (La.6/30/00), 764 So.2d 41, 43. “In the absence of the Direct Action Statute, a plaintiff would have no right of action against an alleged tortfeasor’s liability insurer because the obligation between the plaintiff and the alleged tortfeasor is delictual in nature, and plaintiff has no contractual relationship with the tortfeasor’s insurer.” Green, 08-2868, p. 3, 24 So.3d at 184. Because it “provides the sole procedural right of action against the insurer in this case, the Direct Action Statute provides ‘the rules regulating the subject,’ and venue may only be determined according to that statute’s venue provision.” Id. “Venue means the parish where an action or proceeding may properly be brought and tried under the rules regulating the subject.” La. C.C.P. art. 41.
IsThe evidence adduced to date indicates that Mr. Blow was exposed to asbestos in the workplace in the 1960’s. During this time, the Direct Action Statute provided, in pertinent part, as follows:
The injured person or his or her survivors or heirs hereinabove referred to, at their option shall have a right of direct action against the insurer within the terms and limits of the policy; and such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under *250 ' the general rules of venue prescribed by Art. 42, Code of Civil Procedure.
La. R.S. 22:655.[6]
In 1988,' the legislature amended the Direct Action Statute, making both stylistic and substantive changes. See Acts 1988, No. 934. First, Act 934 divided what had been a single paragraph into discrete enumerated paragraphs. The act also made a handful of stylistic changes to the statute’s wording, none of which are at issue in this case. As for substantive changes, the legislature amended the statute to limit the instances in which a plaintiff could proceed against the insurer alone. The legislature, specifically, added the- following provisions to the statute following its reference to “Art. 42”:
B. (1) ... However, such action may be brought against the insurer alone only when: '
(a) The insured has b¿en adjudged a bankrupt by a court of competent jurisdiction or when proceedings to adjudge an insured a bankrupt have been commenced before á court of competent jurisdiction.
(b) The insured is insolvent.
|fl(c) Service of citation or other process cannot be made on the insured.
(d) When the cause of action is for damages as a result of an offense or quási-offense between children and their parents or between married persons. :
(e) When the insurer is an uninsured motorist carrier.
La. R.S. 22:1269 B,
Notably, Act 934 left untouched the Direct Action Statute’s venue provisions. The legislature also indicated that “[t]his Act [Acts 1988, No. 934] shall become effective on January 1, 1989, and shall apply to causes of action accruing on or after that date.”
In 1989, the legislature again amended the Direct Action Statute and inserted “only” following “Code of Civil Procedure Art. 42” in B(l)’s introductory paragraph. See Acts 1989, No. 117. The 1989 comment to the amendment of La. R.S. 22:655 specifies that “[t]his Section has been amended to provide that the reference to Article 42 does not include the exceptions under Articles 71 through 85.... The amendment changes the result in Kellis v. Father, 523 So.2d 843 (La.1988).”[7] Act 117 contains no expression of legislative intent as to whether it was to apply prospectively or retroactively.
The current version of the Direct Action Statute now provides that:
The injured person or his survivors or heirs mentioned in Subsection A of this Section, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured, and insurer jointly and in so lido, in the parish in which the accident or injury occurred or in the parish in which an |inaction could be brought against either the insured or the insurer under the general rules of venue prescribed by Code of Civil Procedure Art. 42 only when:
(a) The insured has been adjudgéd a bankrupt by a court of competent ju *251 risdiction or when proceedings to adjudge an insured a bankrupt have been commenced before a court of competent jurisdiction;
(b) The insured is insolvent;
(c) Service of citation or other process cannot be made on the insured;
(d) When the cause of action is for damages as a result of an offense or quasi-offense between children and their- parents or between married persons; -
(e) When the insurer is an uninsured motorist carrier; or
(f) The insured is deceased.
La. R.S. 22:1269 B(l).
As the statute currently stands, the first venue alternative under La. R.S. 22:1269 B(l) is the parish where the accident or injury occurred. The second is any parish in which the action could be brought against the insured under the general venue rules of La. C.C.P. art. 42 only. The third venue alternative is in any parish in which the action could be brought against the insurer under the general 'venue rules of La. C.C.P. art. 42 only. ’ And plaintiffs bringing suit in accordance with the Direct Action Statute cannot take- advantage of the exceptions to La. C.C.P. art. 42’s general venue provisions, including La. C.C.P. art. 73. See Trascher, 10-1287, p. 2, 43 So.3d at 961-962; Dempster v. A.P. Green Indus., Inc., 99-2198, p. 3 (La.App. 4 Cir. 1/26/00), 753 So.2d 330, 332. La. C.C.P. art. 42 indicates that an Inaction against an individual who is domiciled in this state shall be brought in the parish of the domicile, or if he resides but is not domiciled in the state, in the parish of his residence.[8] This article also indicates that an action against a foreign or alien insurer — such as OneBeacon — shall be brought in the parish of East Baton Rouge. La. C.C.P. art. 42.
Ill
We now briefly review this matter’s procedural history and examine the judgment under review. ' .
Mr. Blow was diagnosed with asbestosis, a lung disease that is caused by the inhalation of asbestos fibers. See Alberes v. Anco Insulations, Inc., 13-1549, p. 8 (La. App. 4 Cir. 12/10/14), 156 So.3d 795, 800. On April 22, 2014, he filed a petition for damages in the Civil District Court for the Parish of Orleans against numerous parties that were, at one time, involved in the manufacturing, distribution^ sale and ultimate use of asbestos and asbestos-containing products. 'In particular, Mr. Blow claimed that he suffered substantial exposure to asbestos while working for two of his former employers — Avondale Industries, Inc.,[9], and Equitable Shipyards, LLC — between the years 1965 and 1966.[10] In addition to other parties unrelated to this venue dispute, he listed both employers, and one of 112Avondale’s executive officers, as named defendants.[11] His initial petition also sued OneBeacon in its capad *252 ty as liability insurer for three of Avon-dale’s former executive officers in accordance with the Direct Action Statute.[12]
Mr. Blow died on August 27, 2014, in St. Tammany Parish and his surviving spouse and sons were subsequently substituted by way of an amending petition for Mr. Blow and his claims. The Blows, however, insist that they are not pursuing wrongful death claims against OneBeaeon in its capacity as direct action insurer of the eleven executive officers.[13] See La. Civil Code art. 2315.2.[14] On November 17, 2015, the Blows amended the petition a second time in order to pursue direct Inaction claims against OneBeaeon in its capacity as liability insurer for an additional eight Avondale executive officers.[15]
Subsequently, OneBeaeon, on behalf of six of Avondale’s executive officers, brought an exception of improper venue contending that as plaintiffs were proceeding against them via the Direct Action Statute, venue in a suit against them was only proper in one of three places: 1) Jefferson and St. Tammany Parishes, where Mr. Blow was exposed to asbestos and subsequently died; 2) East Baton Rouge Parish, which is OneBeacon’s Louisiana domicile; or, 3) a parish where the executive officers resided or were domiciled. Noting that Mr. Blow was never exposed to asbestos in Orleans Parish, and that the six executive officers in question neither resided nor were domiciled in Orleans Parish, OneBeaeon argued that the *253 plaintiffs cannot maintain their action against it in Orleans Parish in its capacity as direct action insurer for the six executive officers. In support, OneBeacon relied upon Trascher, supra, the Supreme Court’s most recent opinion interpreting the Direct Action Statute. OneBeacon, however, did not contest venue in Orleans Parish in either its individual capacity or as direct action insurer of the remaining executive officers.
The plaintiffs responded to OneBeacon’s exception by arguing that Trascher was inapplicable to the facts of their survival claim against OneBeacon because it |14applied the post-Act 934 version of the Direct Action Statute. Instead, the plaintiffs argued that their direct action survival claims are governed by the version of the statute which predated Act 934 and was in effect at the time of Mr. Blow’s exposure to asbestos. This is so, they assert, because Act 934’s amendments to the statute effectively created a new statute, the entirety of which could only be applied, in accordance with clear legislative pronouncement, to causes of action accruing after the act’s effective date — January 1, 1989. The addition of the word “only” after the phrase “Code of Civil Procedure Art. 42,” they asserted, did not modify the statute as it had historically existed but rather the version of the statute brought about by Act No. 934. Act 117’s subsequent addition of the word “only,” the plaintiffs argued, could only be applied to causes of action that accrued after January 1,1989, Act 934’s effective date.
The plaintiffs then noted that jurisprudence interpreting the version of the Direct Action Statute that pre-dated the changes ushered in by Act 117 allowed them to bring suit in any parish where venue was proper for one of the numerous solidarily obligated defendants. See Kel-lis, 523 So.2d at 847. Because five of Avondale’s direct action executive officers either resided or were domiciled in Orleans Parish, the plaintiffs reasoned, venue was also proper in Orleans Parish for the remaining solidarily obligated defendants, including the six executive officers who did not reside in Orleans Parish.
The parties argued the merits of One-Beacon’s exception before the trial judge who, subáequently, rendered judgment in favor of OneBeacon and against |1fithe plaintiffs on January 29, 2016. The plaintiffs then sought timely supervisory review.
IV
We first address the plaintiffs’ assertion that the trial judge erred in applying the current version of the Direct Action Statute to OneBeacon’s exception of improper venue.[16] In sustaining OneBea-con’s exception, the trial judge rejected the plaintiffs’ argument that application of the Direct Action Statute’s present venue rules to the facts of their case constitutes *254 an impermissible retroactive application. The trial judge then applied the Direct Action Statute’s venue provisions found in the current version of .the statute and dismissed , without prejudice the plaintiffs claims against OneBeacon in its capacity as direct action insurer of the six. executive officers who either reside or are domiciled outside of Orleans Parish. While the plaintiffs correctly restate ,the rule respecting the application of substantive laws to claims for damages stemming from certain long-latency illnesses, such as asbestosis, we conclude that it is legally incorrect with respect to the. application of purely procedural laws, such as the Direct Action | ^Statute’s venue provisions. See Austin v. Abney Mills, Inc., 01-1598, p. 1 (La.9/4/02), 824 So.2d 1137, 1140.[17]
The general rule against retroactive application of legislative enactments and its exceptions is codified in La. Civil Code art. 6, which provides: “In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.” Article 6, therefore, requires us to “first ascertain whether the enactment expresses legislative intent regarding retrospective or prospective application. If such intent is expressed, the inquiry ends unless the enactment impairs contractual obligations or vested rights. If no such intent is expressed,- the enactment must be classified as either substantive, procedural or interpretive.” Keith v. U.S. Fid. & Guar. Co., 96-2075, p. 6 (La.5/9/97), 694 So.2d 180, 183. It is well accepted that substantive laws either establish new rules, rights-, and duties or change existing ones. See St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 817 (La.1992). Interpretive laws, on the other hand, merely establish the meaning the statute had from the time of its enactment. See id. Procedural laws prescribe a method for enforcing a previously h7existing substantive right and relate to the form of the proceeding, or the operation of the laws. See Keith, 96-2075, p. 6, 630 So.2d at 183. Because the application of legislative, enactments has constitutional implications under the due process and contract clauses of both the United States and Louisiana Constitutions, even where the Legislature has expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively- if it would impair contractual obligations or disturb vested rights. See Keith, 96-2075, p. 6, 630 So.2d at 183.
Turning now to analyze Act 934, we observe that the Legislature expressly provided that “[t]his Act shall become effective on January 1, 1989, and shall apply to causes of action accruing on or after *255 that date.” See Section 2 of Acts 1988, No. 934 (emphasis added). Our examination of Act 934 also reveals that it left unchanged the Direct Action Statute’s venue provisions even though it prospectively limited the instances in which an injured person may sue an insurer.directly without also naming the insured as a defendant.[18] This was, surely, the Legislature’s intention in enacting Act 934. While this aspect of Act 934 cannot be applied retroactively to causes of action that accrued prior to its effective date, there is simply no indication that the legislature intended the version of the Direct Action Statute set out in Act 934 to replace that which came -before as though the prior version of the statute never existed. See, e.g., Naquin v. Titan Indemnity Co., 00-1585, p.. .7 (La.2/21/01), 779. So.2d 704, 709.[19] While Act 934’s substantive limiting changes to the Direct Action Statute — none of which are at issue in this case — can only be applied prospectively, we discern no support for the assertion that it created a new statute such that any' subsequent amendments can only be applied to causes of action accruing after January 1, 1989.
Our analysis, however, ¡does not stop here because the legislature amended the statute again hr 1989 to add the word “only” after the phrase-“in- the parish in which an action could be brought against either the insured or The insurer under the general rules of venue prescribed by Code of Civil Procedure Art. 42.” See Acts 1989, No. 117. Unlike Act 934, Act 117 contains no legislative pronouncement as to its retroactive or prospective application. What is certain, however, is that Act 117 embodies a legislative reaction to, and refutation of, the Supreme Court’s Kellis opinion, which held that the Direct Action Statute’s reference to venue under |1sLa. C.C.P. art. 42 also incorporated, by virtue of La. C.C.P. art, 43, the venue exceptions found in La. C.C.P. arts.. 71 through. 83. See.Creen, 08-2868, p. 3,- 24 So.3d at 184 n. 4. ' -
We, however, do not hesitate to find that Act 117’s amendment is interpretive and procedural and can be applied to causes of action that predate its enactment, such'as the Blows’ direct action sur *256 vival clairas against OneBeacon. As stated by the Supreme Court, “[c]hoice of venue is a gateway consideration that is separate from the merits of the case and addresses only the initial inquiry of where to litigate.” Land, 10-1342, p. 7, 62 So.3d at 40. And as long ago as 1962, this Court held that “[m]atters of venue and change of venue are as a rule mere incidents of procedure, and statutes relating to remedies and procedure operate retrospectively.” McKee v. Eskrigge, 139 So.2d 645, 549 (La.App. 4th Cir.1962). As procedural rules, the provisions governing venue do not create substantive rights. See American Dredging Co. v. Miller, 510 U.S. 443, 453, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). The state may change such rules as long as a party receives due notice and an opportunity to be heard. See Naquin, 00-1585, p. 5, 779 So.2d at 708. “[A] civil litigant is not entitled to pursue his cause of action in the exact mode prescribed by the legislature at the time his cause of action arose. No one has a vested right in any given mode of procedure.” Id. (Citations omitted). Given that Act 117 was enacted in 1989 — almost twenty-five years before Mr. Blow filed the present suit — it can hardly be said that he did not have due notice or an opportunity to be heard.
| gpAnd as recognized by the Supreme Court in Green, Act 117’s “addition of the word ‘only was intended to make clear that the venue exceptions in La. C.C.P. arts. 71-85” do not apply in direct action cases. 08-2869, p. 3, 24 So.3d at 184 n. 4. Act 117, insofar as it amended the Direct Action Statute, merely reflects an interpretive gloss to La. R.S. 22:1295. Id. As the result of an interpretive amendment, the changes to the Direct Action Statute brought about by Act 117 can be applied to causes of action that accrued prior to its enactment. See St. Paul Fire & Marine Ins. Co., 609 So.2d at 817. The trial judge, therefore, correctly applied the Direct Action Statute’s venue provision as amended by Acts 1989, No. 117.[20] The plaintiffs cannot resort to La. C.C.P. art. 73 to support their contention that venue is proper in Orleans Parish for all solidarily obligated direct action defendants.
y
Based on the record before us, Orleans Parish is not a proper venue under La. C.C.P. art. 42 as to OneBeacon in its capacity as the direct action insurer of the six Avondale executive officers who reside or are domiciled outside of Orleans Parish. And the plaintiffs do not contend that Mr. Blow was exposed to asbestos anywhere other than Jefferson and St. Tammany Parishes. Pursuant to the Direct Action Statute, therefore, Orleans Parish is not a proper venue for the plaintiffs’ survival action against OneBeacon in its capacity as insurer of the six executive officers in question. See La. R.S. 22:1269 B(l). Venue as to OneBeacon in its | ⅞, capacity as direct action insurer of these six executive officers, however, would be proper in Jefferson, St. Tammany, and East Baton Rouge Parishes. Venue is proper in Orleans Parish as to OneBeacon in its capacity as direct action insurer for the remaining Avondale executive officers. We, therefore, affirm the trial judge’s ruling and sustain the exceptions of improper venue filed by OneBeacon in its capacity as direct action insurer of the six executive officers who either reside or are domiciled outside of Orleans Parish.
*257 VI
Our affirmation of the district judge’s ruling, however, does not mandate dismissal of the Blows’ claims against One-Beacon in its capacity as direct action insurer of the six executive officers in question. Instead, Article 121 of the Code of Civil Procedure provides that: “When'an action is brought in a court of improper venue, the court may dismiss the action, or in the interest of justice transfer it to a court of proper venue.” Similarly, Article 932 B of the Code of Civil Procedure indicates in part that “if an action has been brought in a court of improper jurisdiction or venue, the court may transfer the action to a proper court in the interest of justice.” It is a well-established rule of law that transfer, rather than dismissal, is to be employed except when the plaintiff knowingly files suit in an improper venue. See Ganison v. St. Charles Gen. Hosp., 02-1430, p. 3 (La.App. 4 Cir. 9/17/03), 857 So.2d 1092, 1094 and cases cited therein. “This rule serves efficiency to some extent but, much more importantly, is ‘in the interest of justice’ because it prevents substantive rights being lost, without a determination l^upon the merits, by becoming time-barred under prescription or peremption despite having been filed and served timely albeit in the improper venue.” Id. Here there has been no indication, much less any suggestion, that the Blows knowingly filed their suit in a court of improper venue.[21] Based upon our review of the record, we conclude that the district judge erred when she dismissed without prejudice the Blows’ case against the six direct action Avondale executive officers. Instead, the district judge should have transferred this case to one or more parishes of proper venue after sustaining OneBeacon’s exception.
DECREE
We amend the judgment of the district court sustaining the exceptions of improper venue brought by OneBeacon America Insurance Company, in its capacities as insurer of John Chantry, John Cole, James O’Donnell, Ollie Gatlin, George Kelmell, and Peter Territo to delete the decretal language “dismissed without prejudice.” As amended, we otherwise affirm the judgment. We remand the matter to the district court to transfer the plaintiffs’ survival actions against OneBeacon in its capacities as insurer of the just named executive officers to a proper venue or venues, and, at the same time, set a deadline for the transfer(s) and tax the cost of the transfer(s) to the appropriate party or parties.
WRIT GRANTED; JUDGMENT AMENDED AND AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS
LOMBARD, J., dissents for the reasons assigned by C.J. McKAY.
BELSOME, J., dissents with reasons.
McKAY, C.J., dissents.
JENKINS, J., dissents.

.' Janice S. Blow is Mr. Blow’s surviving spouse, while Timothy and Keith Blow are his surviving descendants.

. We recognize the authoritativeness of the Land v. Vidrine decision, but point out that for the most part the holding relied upon appellate decisions reviewing adverse rulings which only transferred pending lawsuits and did not, as here, dismiss a party (or technically parties, as OneBeacon is dismissed in multiple capacities). Thus, the judgment, with its decretal language of dismissal without prejudice, would appéar to us to qualify as a partial final judgment which is appealable without a designation by the trial judge. See La. C.C.P. art. 1915 A(l) ("A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court ... [dismisses the "suit as to less than all of the parties, defendants, third party plaintiffs, third party defendants, or intervenors.”). Of course, even'if the judgment under review here was a final appealable judgment, we would not by that circumstance be precluded from exercising our supervisory jurisdiction'instead of our appellate jurisdiction. See Livingston Downs Racing Ass'n, Inc. v. Louisiana State Racing Coin’n, 96-1215, p. 3 (La.App. 4 Cir. 6/5/96), 675 So.2d 1214, 1216.

. When we decline to exercise our supervisory jurisdiction, we customarily style the disposition as a writ denial. And a writ denial has "no precedential value.” St. Tammany Manor v. Spartan Bldg. Corp., 509 So.2d 424, 428 (1987). See also Johnson v. Mike Anderson’s Seafood, Inc., 13-0379, pp. 5-6 (La.App. 4 Cir. 6/11/14), 144 So.3d 125, 130. Moreover, any language in an appellate court’s writ denial purporting to rule on the merits of the lower court’s actions is "without effect.” Davis v. Jazz Casino Co., 03-0276, p. 1 (La.6/6/03), 849 So.2d 497, 498.

. We previously granted the relators’? motion to dismiss their application in Duplaisir v. Avondale Industries, Inc., 15-0914 (La.App. 4 Cir. 10/16/15). And in addition to this case, one other case is currently pending. See Dunlap v. American Sugar Refining, Inc., 16-0147.

. In addition to panel members, voting "yes” to authorize are Judges Bagneris, Love, Tobi-as, Landrieu, and Ledet, and voting "no” are Chief Judge McKay (dissenting opinion attached), Judge Lombard (dissenting opinion attached) and Judge Jenkins (dissenting opinion attached). Judge Lobrano is recused.

. Acts 2008, No. 415, effective January 1, 2009, renumbered the Direct'Action Statute from La, R.S. 22:655 to La. R.S. 22:1269,

. The Supreme Court in Kellis held that by virtue of La. C.C.P. art. 43, the Direct Action Statute’s reference to venue under La. C.C.P. art. 42 also incorporated the venue exceptions found in La. C.C.P. arts. 71 through 83. See 523 So.2d at 847.

. Many, if not all, of the executive officers at issue are dead. We have previously held that "venue at a tortfeasor’s domicile is not lost when the tortfeasor dies.” Chiasson v. McDermott Inc., 02-2336, p. 2 (La.App. 4 Cir. 4/2/03), 844 So.2d 1010, 1011, citing Dempster, 99-2198, p. 4, 753 So.2d at 332.

. Huntington Ingalls, Inc. is the successor-in-interest to Avondale, while Equitable Shipyards, LLC is the successor to Equitable Shipyards, Inc.

. Neither Mr. Blow nor his wife and sons contend that he suffered exposure to asbestos in Orleans Parish.

.Mr. Blow did not sue this former executive officer — Mr, Albert Bossier — via the direct action statute, but instead elected to sue him directly. OneBeacon’s exception, moreover, did not concern proper.venue for the.plaintiffs’ suit against Mr. Bossier and we do not address it here.

. Prior to 1976, La. R.S. 23:1032 provided that workers’ compensation benefits were the exclusive remedy of an employee, his personal representatives, dependents or relations, against an employer for injuries arising out of and in the course of his employment. See Watts v. Am. Optical Corp., 98-0455, pp. 2-3 (La.9/8/99), 740 So.2d 1262, 1265. Because this section did not expressly confer immunity from tort suits on any person other than the employer, the Supreme Court held in Canter v. Koehring Co., 283 So.2d 716 (La.1973), that an injured worker was allowed to seek recovery in tort from negligent executive officers and their liability insurers. "Additionally, if the injured worker died from occupational injuries, his survivors could maintain both a survival action for the decedent’s damages as well as a wrongful death action for their own damages against executive officers.” Watts, 98-0455, p. 3, 740 So.2d at 1265, However, the 1976 legislature amended La. R.S. 23:1032 with Act No. 147 to extend the employer’s tort immunity to persons previously considered third parties under the Act. See id.

. We observe, however, that the Blows’ first amending petition asserts a broad wrongful death claim pursuant to Article 2315.2 of the Louisiana Civil Code against "all defendants.”

. As the Supreme Court has instructed, wrongful death and survival "are totally separate and distinct causes of action that arise at different times and allow recovery of completely different damages”:
The survival action comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim’s death and permits recovery only for the damages suffered by the victim from the time of injury to the moment of death. It is in the nature of a succession right, On the other hand, the wrongful death action does not arise until the victim dies and it compensates the beneficiaries for their own injuries which they suffer from the moment of the victim's death and thereafter. Wrongful death damages compensate beneficiaries for their own injuries.
Walls v. Am. Optical Corp., 98-0455, p. 14 (La.9/8/99), 740 So.2d 1262, 1273.

.As it currently stands, the Blows’ petitions allege direct action claims against eleven former Avondale executive officers: Henry "Zac” Carter, John Chantry, John Cole, Hettie Margaret Dawes-Eaves, Ollie Gatlin, Edwin Hartzman, George Kelmell, John McCue, Ewing Moore, James O’Donnell, and Peter Territo. From these, OneBeaeon identifies the six former executive officers that neither reside nor are domiciled in Orleans Parish as John Chantry, John Cole, James O’Donnell, Ollie Gatlin, George Kelmell, and Peter Terri-to.

. An objection of improper venue is raised by a declinatory exception. See La. C.C.P. art. 925. Evidence may be introduced to support or controvert the objection when the grounds thereof do not appear from the petition. See La. C.C.P. art. 930. The defendant, accordingly, bears the burden of offering evidence to support an exception of improper venue when the grounds for the objection do not appear on the face of the plaintiff’s petition. See French Jordan, Inc. v. Travelers Insurance Company, 07-0007, p. 6 (La.App. 4 Cir. 4/25/07), 958 So.2d 699, 703. When no evidence is introduced at the trial of the exception, the court is restricted to the allegations of the petition, which for purposes of the exception are to be accepted as true. See Vital v. State, 522 So.2d 151, 152 (La.App. 4th Cir. 1988). Both OneBeacon and the plaintiffs attached exhibits to their district court exceptions. The record before us does not indicate whether these exhibits were formally introduced into evidence at the hearing on the exception.

. In Austin, a tort suit claiming damages for the contraction of mesothelioma, the Supreme Court adopted "the significant exposure theory articulated in Cole v. Celotex, 599 So.2d 1058 (La. 1992), for fixing the date of accrual for a cause of action under La. Civ. Code art. 2315 in a long-latency occupational disease case in which the plaintiff suffers from the disease.” 01-1598, p. 1, 824 So.2d at 1140. The court explained that “in order to establish when the tort cause of action accrued in a long-latency occupational disease case, wherein the plaintiff suffers from the disease, the plaintiff must present evidence that the exposures were ‘significant and such exposures later resulted] iñ the manifestation of damages’" Austin, 01-1598, p. 26, 824 So.2d at 1154 (citations omitted). Asbestosis is a long-latency disease. See, e.g., Cole, 599 So.2d at 1065-1066. In regards to asbestos-related injuries, the court noted that " ‘tor-tious exposures are significant when asbestos dust has so damaged the body that the fibro-genic effects of its inhalation will progress independently of further exposure.’ ” Austin, 01 — 1598, p. 25, 824 So.2d at 1154 (citations omitted).

. Act 934 also broke down the Direct Action Statute into discrete paragraphs and made a handful of grammatical and stylistic changes, none of which are at issue in this case.

. The legal issue in Naquin, an automobile liability case, concerned the retroactive application, vel non, of two successive amendments to La. R.S. 13:5107, a statute governing lawsuits against the state, state agencies, and political subdivisions. The plaintiff argued that changes made to the statute by the first amending act, which the court concluded was purely procedural, could not be applied to his cause of action, which arose before the amendment’s effective date. This was so, the plaintiff argued, because the second amending act, which occurred after his suit was filed, "amended and reenacted” the statute and limited the application of the second amending act’s provisions to causes of action that post-dated the • amendment. The Supreme Court concluded:
"Plaintiff's argument that the phrase ‘to amend and reehact' contained in' [Acts 1988; No.- 518]. somehow, allows that Act to go back in time and erase the provisions , of [Acts 1987, No. 63] as if they never existed is without merit! The phrase "to amend and reenact” is standard drafting language where an existing statute is being changed in some way, and despite plaintiff’s assertions, does not in itself carry any special weight ... There is simply no evidence to indicate that the legislature intended for Act 51:8 to replace Act 63 as though Act 63 never existed."
Naquin, 00-1585, pp. 6-7, 779 So.2d at 709. Although the retroactive/prospective applications of the two acts at issue in this case are in opposite posture to the two acts at issue in Naquin, the plaintiffs’ arguments are no different from those of the Naquin plaintiff.

. As noted, the amendments to the Direct Action Statute ushered in by Acts 1988, No. 934, are not at issue in this case.

. Venue is indisputably proper for the remaining five Avondale direct action executive officers.